890 So.2d 711 (2004)
STATE of Louisiana
v.
Edward Aaron LOWERY, Jr.
No. 2004 KA 0802.
Court of Appeal of Louisiana, First Circuit.
December 17, 2004.
Rehearing Denied January 19, 2005.
*715 Honorable Walter P. Reed, District Attorney, Covington, Dorothy A. Pendergast, Metairie, Counsel for Appellee State of Louisiana.
Frank Sloan, Mandeville, Counsel for Defendant/Appellant Edward A. Lowery, Jr.
Edward Aaron Lowery, Jr., Angola, Pro Se/Defendant.
Before: WHIPPLE, FITZSIMMONS, and DOWNING, JJ.
FITZSIMMONS, J.
The defendant, Edward Aaron Lowery, Jr., was charged by bill of information with two counts of simple burglary, violations of La. R.S. 14:62. He entered a plea of not guilty.[1] The trial court denied the defendant's motions to suppress evidence and confession. After a trial by jury, the defendant was found guilty as charged as to both counts. Subsequently, the state filed a multiple offender bill of information. The trial court denied the defendant's counseled and pro se motions for post-verdict judgment of acquittal and the defendant's counseled motion for new trial. The defendant was adjudicated a fourth felony habitual offender. As to count one, as a fourth felony habitual offender, the defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. As to count two, the defendant was sentenced to twelve years imprisonment at hard labor, to be served concurrently with the enhanced sentence imposed as to count one.[2] The trial court denied the defendant's motion to reconsider sentence. The defendant now appeals, raising the following counseled assignments of error:
1. The trial court erred and/or abused its discretion in denying the defense motion to suppress;
2. The trial court erred in finding the defendant to be a fourth felony offender;
3. The sentence imposed is excessive;
4. The trial court failed to properly advise the defendant of the delays for filing for post-conviction relief.
In the defendant's supplemental brief, he argues that the trial court erred in using a possession of cocaine predicate (punishable by less than ten years) to sentence him to life imprisonment, that the trial court erred by considering fingerprints contained in an arrest registry in adjudicating the defendant a fourth felony habitual offender, and finally, that the trial *716 court erred in imposing two sentences herein.
For the following reasons, we affirm the convictions, the habitual offender adjudication, and the sentences. We remand with instructions to give the defendant written notice of the correct prescriptive period for applying for post-conviction relief within ten days of the rendition of this opinion and to file written proof in the record of the proceedings that the defendant has received the notice.

STATEMENT OF FACTS
On June 29, 2002, at approximately 7:23 a.m., Corporal Jeffrey Kahrs and Sergeant Gallaher of the Slidell City Police Department responded to a reported disturbance at a Wal-Mart store located in Slidell, Louisiana. Employees of the Wal-Mart store flagged down Sergeant Gallaher and reported an argument between a male and female patron. The officers discovered that the source of the disturbance was an argument between a male patron who identified himself as Eddie Smith, the defendant, and a female who identified herself as Regina Clark. The defendant stated that he had a valid Louisiana driver's license under the name given. However, a search did not indicate the issuance of a Louisiana driver's license under the name given by the defendant. Additional efforts to obtain identification from the defendant were unsuccessful. The female stated that she only knew the defendant as Eddie and did not know his last name.
While performing a pat-down search, the officers visually observed a checkbook in the defendant's right rear pocket. The checks inside the checkbook bore the name Joel Clifton. The defendant informed the officers that the checkbook belonged to a friend who had left it in the defendant's vehicle. Sergeant Gallaher called the telephone number listed on the checks and spoke with a relative of Joel Clifton. The officers further detained the defendant and advised him of his Miranda rights.
Joel Clifton returned the telephone call to Sergeant Gallaher, and arrangements were made for Clifton to come to the scene and identify his property. At this point, the defendant admitted that his name was Edward Lowery and not Eddie Smith. Sergeant Gallaher inspected the outside of the vehicle being used by the subjects. Although the vehicle was a red Pontiac Firebird, an owner's manual for a Ford brand vehicle was inside of the vehicle in plain view. Other items that were in plain view in the vehicle included a stereo faceplate and a stereo owner's manual. The manual and faceplate were of a different brand than the stereo installed in the vehicle.
When Clifton arrived at the scene, he verified that the checkbook found on the defendant was his checkbook that had been reported stolen after his vehicle was burglarized. The female, still known to the officers as Regina Clark, consented to the search of the automobile. A consent to search form was executed. The officers recovered several items that were identified by Clifton as being stolen from his vehicle. Those items included compact discs, a pocketknife, a medicine bag, a grooming kit, and a dart set. Additional checks belonging to Clifton were also recovered from the vehicle.
Several of the items located in the vehicle were subsequently identified by Melissa Giglio as having been her property and stolen from her vehicle. Those items included the registration papers for Giglio's vehicle, a cell phone bill, the Panasonic stereo faceplate, and a remote control and manual for the Panasonic stereo.
The officers ultimately determined that there was an outstanding attachment with *717 the St. Tammany Parish Sheriff's Office for the arrest of the defendant. The defendant and the female were placed under arrest. A paycheck stub bearing the name Joel M. Clifton and insurance cards for Clifton's vehicle were located in the female's purse when it was searched incident to the arrest. A Louisiana driver's license bearing the name Regina Clark was also located in the female's purse. Detective Robert Juge of the St. Tammany Parish Sheriff's Office conducted the follow-up investigation concerning the burglary of the vehicles of Giglio and Clifton. Detective Juge ultimately determined the identity of the female who formerly identified herself as Regina Clark to be Pamela Alphonso. During the trial, Alphonso admitted to her presence and participation in the burglary of both vehicles.
The burglary of Giglio's vehicle took place on June 27, 2002, two days prior to the instant arrests. Giglio was an employee of the same Wal-Mart in Slidell, and her vehicle was parked in Wal-Mart's parking lot when the burglary took place. Giglio's vehicle was parked on the right side of the Wal-Mart store when the defendant burglarized it. According to Alphonso's trial testimony, the defendant parked next to the vehicle and entered it by sliding the window off track. Alphonso stood at the rear of Giglio's vehicle and monitored the area while the defendant conducted the burglary of the vehicle.
The burglary of Clifton's vehicle took place on the next day, June 28, 2002. The burglary occurred at Davis Landing Boat Launch, located outside of the city limits of Slidell. Clifton began fishing in that area at approximately 6:00 a.m. When he returned to his vehicle, between 11:00 and 11:30 a.m., he noticed that his vehicle had been broken into. The driver's window had been broken with an unknown object. During the trial, Alphonso stated that she had been drinking a strong alcoholic beverage and she had taken valium on the morning of the burglary of Clifton's vehicle. She was, however, able to recall some of the items that were stolen from the vehicle by the defendant. Alphonso also admitted to signing two of the checks that were stolen from Clifton's vehicle. She and the defendant took the checks to two separate banks and successfully cashed them. The defendant was ultimately charged with and convicted of two counts of burglary.

COUNSELED ASSIGNMENT OF ERROR NUMBER ONE
In the first counseled assignment of error, the defendant avers that the trial court erred in denying the motion to suppress evidence. First, the defendant argues that there was no reasonable suspicion to support the investigatory stop conducted herein. Second, the defendant argues that the alleged pat-down for weapons did not give the officers the right to open and read the checkbook retrieved from the defendant's pocket. Finally, the defendant argues that the evidence seized by the police officers was fruit of a poisonous tree.
The Fourth Amendment to the United States Constitution and article I, § 5, of the Louisiana Constitution protect people against unreasonable searches and seizures. Subject only to a few well-established exceptions, a search or seizure conducted without a warrant issued upon probable cause is constitutionally prohibited. Once a defendant makes an initial showing that a warrantless search or seizure occurred, the burden of proof shifts to the state to affirmatively show it was justified under one of the narrow exceptions to the rule requiring a search warrant. La.Code Crim. P. art. 703 D; State v. Johnson, *718 98-0264, p. 3 (La.App. 1st Cir.12/28/98), 728 So.2d 885, 886.
The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is, however, recognized by La.Code Crim. P. art. 215.1, as well as both federal and state jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Ducre, 604 So.2d 702, 706 (La.App. 1st Cir.1992). Louisiana Code of Criminal Procedure article 215.1 A codifies the United States Supreme Court's authorization of protective searches for weapons in Terry and provides: "A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions."
Reasonable suspicion to stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether a detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Robertson, 97-2960, pp. 2-3 (La.10/20/98), 721 So.2d 1268, 1269; State v. Jones, 99-0861, p. 10 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 36-37, writ denied, 2000-2183 (La.9/28/01), 797 So.2d 685. Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989; State v. Tyler, 98-1667, p. 4 (La.App. 4 Cir. 11/24/99), 749 So.2d 767, 770. In order to assess the reasonableness of an officer's conduct, it is necessary to balance the need to search or to seize against the harm of invasion. State v. Scott, 561 So.2d 170, 173 (La.App. 1st Cir.), writ denied, 566 So.2d 394 (La.1990).
The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Payne, 489 So.2d 1289, 1291-1292 (La.App. 1st Cir.), writ denied, 493 So.2d 1217 (La.1986). The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop. State v. Dennis, 98-1016, p. 5 (La.App. 4 Cir. 9/22/99), 753 So.2d 296, 299. Public safety requires some flexibility for police officers to investigate and prevent crime. State v. Wesley, 28,012, p. 2 (La.App. 2 Cir. 4/3/96), 671 So.2d 1257, 1258, writ denied, 96-1127 (La.10/4/96), 679 So.2d 1379. In reviewing the totality of the circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Hall, 99-2887, p. 4 (La.App. 4 Cir. 10/4/00), 775 So.2d 52, 57; State v. Cook, 99-0091, p. 6 (La.App. 4 Cir. 5/5/99), 733 So.2d 1227, 1232. Deference should be given to the experience of the officers who were present at the time of the incident. State v. Ratliff, 98-0094, p. 3 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, 254, writ denied, 99-1523 (La.10/29/99), 748 So.2d 1160. A trial court's ruling on a motion to suppress the evidence is entitled to great weight because the court had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Peterson, XXXX-XXXX, p. 9 (La.App. 1 Cir. 12/31/03), 868 So.2d 786, 792, writ denied, XXXX-XXXX (La.9/3/04), 882 So.2d 606.
In denying the motion to suppress the evidence, the trial court stated as follows:
I find that this was a situation where the officer was there properly. That there had been a report of a disturbance. They reported to the scene. Before the checkbook was even taken from the person of Mr. Lowery, Pamela Alphonso who identified herself wrongfully *719 as Pamela (sic) Clark, gave another name as Pamela (sic) Clark confirmed that a disturbance had taken place. Mr. Lowery had identified himself as Edward (sic) Smith, which was an improper name, and they had checked and he had said he did have a valid driver's license. That was checked out by the officer before that point, before the point of the checkbook. And it did not check out that he had a driver's license of Eddie Smith. He said he had no ID before that point. They had asked Ms. Clark or Ms. Alphonso his name and she said that she only knew him as Eddie. And at that point the officer certainly had the inquiry that under a Terry type situation allows them to inquire as to the identity and reason why someone is in a location. They were certainly looking into his identity and it had certainly not been established. At that point, they saw the checkbook in the pocket. And certainly that keys into identity and they had a logical reason to look into identity and they had warrant to remove that and to establish a proper identity. After it was removed, then further things came in all the way down to the consent to search, which was totally valid under the circumstances. I don't think there is any question about that. Under the circumstances, in this case, I certainly think that it was a valid search and I am going to deny the Motion to Suppress.
Sergeant Gallaher was abruptly stopped by employees of the Wal-Mart store who reported a disturbance involving an altercation between a male and female patron. The officers had sufficient information to warrant reasonable suspicion that several violations of the law may have occurred, including disturbing the peace (La. R.S. 14:103), simple battery (La. R.S. 14:35) or simple assault (La. R.S. 14:38). Thus, at the time of the encounter, the officers were aware of facts which provided reasonable cause to make an investigatory stop to inquire about the defendant's activities.
A police officer who stops a person pursuant to article 215.1 may conduct a limited pat-down frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. La.Code Crim. P. art. 215.1 B. A lawful detention for questioning does not necessarily give the investigating officer the authority to conduct a pat-down for weapons. State v. Hunter, 375 So.2d 99, 101 (La.1979). Such a frisk is permissible only under circumstances where a reasonably prudent person would be warranted in the belief that his safety or that of others was in danger. Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. at 1883. To establish reasonable belief, the officer must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous. Sibron v. New York, 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968). It is not necessary for an investigating officer to establish that a detained individual was more probably than not armed and dangerous in order to justify a pat-down for weapons. It is sufficient if the officer establishes a substantial possibility of danger. Hunter, 375 So.2d at 101-102.
In the present case, during the inquiry of the defendant, the defendant provided a name and date of birth and stated that he had a Louisiana driver's license under such name. The search for such identification revealed that there was no license issued under the name and birth date given by the defendant. The officers' continued attempts to discern the defendant's identity were to no avail, as the defendant continued to be evasive. The female, then known to the officers as Regina Clark, could not provide a full name for the defendant. *720 She did, however, confirm that an altercation had taken place. An inference that the defendant was potentially armed and dangerous was reasonable based on the circumstances. Thus, the pat-down frisk for weapons was reasonable herein. Moreover, when Sergeant Gallaher, while performing the frisk, discovered the checkbook in the defendant's rear pocket, it was reasonable for him to remove it to assure that no weapons were located behind it.
Article 215.1 specifically states that once a law enforcement officer legally stops a person, he may "demand" of him his name, address, and an explanation of his actions. In assessing the reasonableness of an officer's conduct by balancing the need to search or to seize against the harm of invasion, we must compare the importance of the government's law enforcement interests to the intrusion on the individual's privacy interests. The ability to briefly stop a suspect, ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice. United States v. Hensley, 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985). Obtaining a suspect's name in the course of a Terry stop serves the important governmental interest of enabling an officer to quickly determine whether a suspect is wanted for another offense or has a record of violence or mental disorder. Conversely, requiring a name can help clear a suspect and allow the officers to concentrate their efforts elsewhere. Officers called to investigate domestic disputes need to know with whom they are dealing in order to assess the situation, the threat to their own safety, and possible danger to the potential victim. In Hiibel v. Sixth Judicial District Court of Nevada, Humboldt County, ___ U.S. ___, 124 S.Ct. 2451, 2459, 159 L.Ed.2d 292 (2004), the United States Supreme Court upheld a statute that makes it a crime for someone detained on the basis of reasonable suspicion to fail to provide identification. The Supreme Court reasoned that an identity request has an immediate relation to the Terry stop's purpose, rationale, and practical demands, and the threat of criminal sanction helps ensure that the request does not become a legal nullity. Hiibel, ___ U.S. at ___, 124 S.Ct. at 2459.
At the point of the removal of the checkbook, the defendant had provided false information regarding the issuance of a Louisiana driver's license under the name and date of birth provided. The defendant stated that he did not have any identification with him. Thus, the defendant failed to comply with the officers' demands of the defendant's name and address. We find that the officers herein were clearly within reason in opening the checkbook once it was properly removed from the defendant's pocket. The need to open the checkbook in an attempt to obtain the information that the defendant continued to withhold clearly outweighed any harm from such minor invasion. Thus, the trial court did not err in denying the defendant's motion to suppress. This assignment of error lacks merit.

COUNSELED ASSIGNMENT OF ERROR NUMBER TWO
In the second counseled assignment of error, the defendant avers that the trial court erred in adjudicating him a fourth felony habitual offender. The defendant specifically argues that two of the predicate offenses consisted of guilty pleas occurring on the same date, May 21, 1997. The defendant avers that under State ex rel. Mims v. Butler, 601 So.2d 649 (La.1992) (on rehearing), both convictions could not be used to enhance his sentence.
*721 The multiple offender bill of information seeks to establish the following predicate convictions: case number 271982 of the 22nd Judicial District Court, wherein the defendant pled guilty as charged to simple burglary (in violation of La. R.S. 14:62) on May 21, 1997; case number 254640 of the 22nd Judicial District Court, wherein the defendant pled guilty as charged to possession of cocaine (in violation of La. R.S. 40:967) on May 21, 1997; and case number 873131 of the 24th Judicial District Court, wherein the defendant pled guilty to simple burglary (in violation of La. R.S. 14:62) on April 15, 1988.[3] The trial court adjudicated the defendant a fourth felony offender based on the above predicates. In its reasons for judgment, the trial court, in pertinent part, stated as follows as to its adjudication of the defendant:
The Court is cognizant of the fact that two convictions were dated the same day (May 21, 1997). Under State ex rel. Mims v. Butler, 601 So.2d 649 (1992) these could not both be used to enhance. However, language in State v. Everett, 816 So.2d 1272 (2002) questions the prior Mims decision [citing pages 1280-1283 by footnote]. The Court has found no case on point since the Everett decision. However, this Court is of the opinion that the legislative intent reported by the Supreme Court in Everett expands the application of the Habitual Offender law beyond the commission/conviction/commission approach under Mims. Therefore, the Court does adjudicate Edward Lowery a fourth felony offender.
The Habitual Offender Law provides that "[a]ny person who, after having been convicted within this state of a felony... thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as [specified in the habitual offender statute] ...." La. R.S. 15:529.1 A(1). In Mims, the Louisiana Supreme Court indicated as follows: "The sequence necessary for enhancement of sentencing under the Habitual Offender Law is commission of crime, or crimes, followed by conviction (equals a first offender), then commission of another crime, or crimes, followed by conviction (equals a second offender), and so forth." Mims, 601 So.2d at 651 n. 4. As stated by the trial court in the instant case, in State v. Everett, 2000-2998, pp. 17-18 (La.5/14/02), 816 So.2d 1272, 1282-1283, the supreme court, in dictum, questioned the wisdom of its holding in Mims. In Everett, the high court revealed that, in the course of examining a different aspect of the Habitual Offender Law, legislative material unavailable at the time of the Mims decision had been uncovered. The supreme court suggested that the newly discovered legislative material "calls into question the underpinnings of the Mims decision." Everett, 2000-2998 at p. 18, 816 So.2d at 1283. However, the supreme court specifically noted that it was not directly presented with the issue of whether to continue to interpret La. R.S. 15:529.1 B as incorporating a sequential requirement for enhanced penalties in the sentencing of multiple offenders and, as such, would "not expound further on this question." Everett, 2000-2998 at p. 18, 816 So.2d at 1282-1283.
Recently, the Louisiana Supreme Court granted certiorari in State v. Johnson, *722 2003-2993 (La.10/19/04), 884 So.2d 568, to consider the continuing validity of their decision in Mims. In Johnson, the court was directly presented with the issue of whether to continue to interpret La. R.S. 15:529.1 B as incorporating a sequential requirement for enhanced penalties in the sentencing of multiple offenders. The supreme court held that Act 688 of 1982 removed the sequential requirement of La. R.S. 15:529.1 for enhanced penalties in the sentencing of multiple offenders and legislatively repudiated the rule of law pronounced in State ex rel. Jackson v. Henderson, 283 So.2d 210 (La.1973). The court expressly overruled its decision in Mims. Johnson, 2003-2993 at pp. 17-18, 884 So.2d at 578-579. It specifically stated as follows:
We therefore hold today that the habitual offender statute, LSA-R.S. 15:529.1, as it appears post-amendment, is clear and unambiguous. There is no statutory bar to applying the law in sentencing for more than one conviction obtained on the same date based on unrelated conduct. The statute simply does not contain a sequential conviction requirement. Rather, the only requirement in the statute is one which has been imposed from the inception: for sentence enhancement purposes, the subsequent felony must be committed after the predicate conviction or convictions. See, LSA-R.S. 15:529.1(A) ("Any person who, after having been convicted within this state of a felony ... thereafter commits any subsequent felony."). Johnson, 2003-2993 at pp. 17-18, 884 So.2d at 578-579.
In the instant case, it is clear from the record that the two convictions entered on May 21, 1997 (case number 271982 and case number 254640) arose from separate and distinct events, occurring on different dates, and not as part of a single criminal episode. The possession of cocaine offense in case number 254640 occurred on February 22, 1996. The simple burglary offense in case number 271982 occurred on March 11, 1997. Finally, the defendant's April 15, 1988 guilty plea in case number 873131 is based on a simple burglary offense that occurred on or about August 10, 1987. Thus, at the time of commission of the instant offenses, the defendant had previously been convicted of three separate felonies, although two of the convictions had been entered on the same date. The district court properly adjudged the defendant to be a fourth felony habitual offender. This assignment of error is without merit.

COUNSELED ASSIGNMENT OF ERROR NUMBER THREE
In the third assignment of error, the defendant avers that the life sentence imposed upon him as a fourth felony habitual offender (as to count one) is excessive. The defendant contends that he is neither a violent offender nor a drug dealer. The defendant argues that there is clear and convincing evidence that he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Both the United States and Louisiana constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const. amend. VIII; La. Const. art. I, § 20. A sentence is generally considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992). If the trial judge finds that an enhanced punishment mandated by the Habitual Offender Law, La. R.S. 15:529.1, makes no "measurable contribution to acceptable goals of punishment" or that the sentence *723 amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the trial judge has the option and duty to reduce such sentence to one that would not be constitutionally excessive. State v. Dorthey, 623 So.2d 1276, 1280-1281 (La.1993). To determine whether a penalty is excessive, we must determine whether the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice. State v. Bonanno, 384 So.2d 355, 358 (La.1980).
When the sentence is mandatory under the habitual offender law, it is presumed to be constitutional. State v. Johnson, 97-1906, p. 7 (La.3/4/98), 709 So.2d 672, 676. However, a court may depart from the mandatory sentence if it finds clear and convincing evidence in the record that rebuts the presumption of constitutionality. Id. The burden is on the defendant to rebut the presumption of constitutionality by showing:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Johnson, 97-1906 at p. 8, 709 So.2d at 676 (quoting State v. Young, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525.)
The Louisiana Supreme Court has cautioned that downward departures from mandatory minimum sentences should only be made in rare cases. State v. Lindsey, 99-3302, 99-3256, p. 5 (La.10/17/00), 770 So.2d 339, 343, certiorari denied, 532 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663 (2001); Johnson, 97-1906 at p. 8, 709 So.2d at 676-677.
The defendant was sentenced as a fourth felony offender under La. R.S. 15:529.1 A(1)(c)(ii). That statutory provision states, in pertinent part, "[i]f the fourth felony and two of the prior felonies are felonies ... punishable by imprisonment for twelve years or more ... the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence." Herein, two of the defendant's prior felonies, the simple burglary conviction in case number 271982 and the simple burglary conviction in case number 873131, were punishable for twelve years. The underlying offense, also simple burglary, is punishable for twelve years. See La. R.S. 14:62. Thus, upon the fourth felony habitual offender adjudication, the defendant was subject to a mandatory life sentence without benefit of parole, probation, or suspension of sentence and was sentenced accordingly.
The defendant cites State v. Hayes, 98-1526, p. 4 (La.App. 1 Cir. 6/25/99), 739 So.2d 301, 303-304, writ denied, 99-2136 (6/16/00), 764 So.2d 955, wherein this court found, based on the facts and circumstances of the particular defendant therein, clear and convincing evidence that the defendant was a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. In Hayes, the defendant was convicted of theft by misappropriating or taking over $500.00. The criminal record of the defendant therein contained the following convictions: two thefts under $100.00, one theft over $100.00, several counts of issuing worthless checks, check forgery, simple robbery, and the instant offense, one theft of over $500.00. The simple robbery occurred when the defendant pushed a minor and stole his bicycle. Although the defendant was a third felony habitual offender, none *724 of his crimes involved a dangerous weapon. Pursuant to La. R.S. 15:529.1 A(1)(b)(ii), the defendant was sentenced to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. We vacated the sentence and remanded to the district court for resentencing based on the defense counsel's ineffectiveness in failing to object to the constitutionally excessive sentence. The state applied for writ of certiorari and the supreme court remanded the case to this court for reconsideration. After reconsideration, we held that life sentence was constitutionally excessive. Hayes, 98-1526 at p. 4, 739 So.2d at 304. While recognizing the seriousness of the offense, theft of approximately $1,000.00, we noted that the defendant in that case admitted the thefts after the police began to question him, and returned $693.00, which was the sum left of the money. Thus, the defendant returned 69% of the money.[4]See State v. Hayes, 97-1526, pp. 2-3 (La.App. 1st Cir.5/15/98), 712 So.2d 1019, 1020.
In the instant case, the defendant similarly possesses a history of non-violent offenses, including the instant offenses. On appeal, the defendant claims that he is not a violent offender or drug dealer, but a thief who may break into automobiles to steal to support a substance abuse problem. However, a record of non-violent offenses cannot be the only reason or even the major reason for declaring a life sentence under the habitual offender law to be excessive. Lindsey, 99-3302 at p. 5, 770 So.2d at 343; Johnson, 97-1906 at p. 7, 709 So.2d at 676. The Louisiana Supreme Court explained:
This is because the defendant's history of violent or non-violent offenses has already been taken into account under the Habitual Offender Law for third and fourth offenders, which punishes third and fourth offenders with a history of violent offenses more severely than those with a history of non-violent offenses. Lindsey, 99-3302 at p. 5, 770 So.2d at 343.
The circumstances of this case are distinguishable from those in Hayes in that the defendant herein did not cooperate with the police, admit to the offenses, or voluntarily return any of the stolen property. In contrast, the defendant continually attempted to evade the police officers. The major basis for the defendant's claim of excessiveness is the non-violent nature of the offenses committed. While the penalty might seem harsh for non-violent crimes, the role of the judiciary is limited to interpretation of the laws enacted by the legislature, which is the branch of government that has the power to effect a change in the law. Moreover, as an appellate court, albeit a civilian jurisdiction, we are persuaded by the interpretation of the Louisiana Supreme Court. Thus, pursuant to legislative fiat and jurisprudential precedence, we find that the defendant in this case has not met his burden of rebutting the presumption of constitutionality. The record is devoid of any evidence that the defendant is the type of offender contemplated by the Louisiana Supreme Court in Dorthey, warranting a downward deviation from the mandatory sentence. A reduction from the mandatory sentence is not warranted in this case.

COUNSELED ASSIGNMENT OF ERROR NUMBER FOUR
In the fourth counseled assignment of error, the defendant avers that the trial court failed to properly advise him of *725 the delays for filing for post-conviction relief pursuant to La.Code Crim. P. art 930.8 C. The defendant avers that the trial court should be directed to provide him with written notice of the correct prescriptive period within ten days of the rendition of the opinion of this court.
Upon the imposition of sentences herein, the trial court stated, in pertinent part, as follows: "And I will notify him he has two years from this date to file any post conviction relief request." (Emphasis added.) However, La.Code Crim. P. art. 930.8 A, pertinently provides, in part: "No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922 ...." (Emphasis added.) Section C of article 930.8 states that at the time of sentencing, the trial court shall inform the defendant of the prescriptive period for seeking post-conviction relief. However, a failure to do so by the trial court has no bearing on the sentence and is not grounds to reverse the sentence or remand the case for resentencing. State v. Morgan, 93-2365, p. 5 (La.App. 1 Cir. 12/22/94), 648 So.2d 1063, 1065-1066, writ denied, 95-0207 (La.6/2/95), 654 So.2d 1104. Rather, because we concur in the defendant's observation, we hereby respectfully direct the trial court to give the defendant written notice of the correct prescriptive period for applying for post-conviction relief within ten days of the rendition of this opinion and to file written proof in the record of the proceedings that the defendant has received the notice. See State v. Lewis, 94-2145, p. 8 (La.App. 1 Cir. 11/9/95), 665 So.2d 38, 43.

PRO SE ASSIGNMENT OF ERROR NUMBER ONE
In the first pro se assignment of error, the defendant avers that the trial court erred in imposing a life sentence.[5] The defendant specifically argues that the guilty plea in case number 254640 of the 22nd Judicial District Court (wherein he pled guilty as charged on May 21, 1997 to possession of cocaine in violation of La. R.S. 40:967) should not have been used to enhance his sentence because the offense is punishable by no more than five years.
As aforesaid, La. R.S. 15:529.1 A(1)(c)(ii) states, in pertinent part, that "[i]f the fourth felony and two of the prior felonies are felonies ... punishable by imprisonment for twelve years or more ... the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence." Herein, two of the defendant's prior felonies, the simple burglary conviction in case number 271982 and the simple burglary conviction in case number 873131, were punishable for twelve years. Thus, there was no need to rely on the possession of cocaine conviction in case number 254640 to impose the life sentence herein. This argument has no merit.

PRO SE ASSIGNMENT OF ERROR NUMBER TWO
In the second pro se assignment of error, the defendant avers that an uncertified copy of fingerprints made at the time of the defendant's arrest should not have been used to prove the existence of a prior conviction of simple burglary. Thus, the defendant avers that the trial court erred in adjudicating him a fourth felony offender.
*726 To prove that a defendant is a multiple offender under La. R.S. 15:529.1, the state must first offer evidence of the prior convictions and then prove that the defendant is the same person who committed these prior felonies. State v. Chaney, 423 So.2d 1092, 1103 (La.1982). The Louisiana Supreme Court in State v. Curtis, 338 So.2d 662, 664 (La.1976), established that evidence is insufficient to adjudge the defendant as a multiple offender when the only link between the defendant and the person who committed the prior felonies is identical names.
At the instant multiple offender hearing, the state presented the testimony of Sergeant Fullilove, an expert in fingerprint identification. On the morning of the hearing, Fullilove prepared a fingerprint card including the defendant's fingerprints. Fullilove compared the fingerprints on the back of state's exhibit number 4, which purported to be a bill of information from case number 271982 (a St. Tammany Parish simple burglary conviction), with the fingerprint card prepared that morning and concluded that the defendant was the same person charged and convicted in that case. Fullilove also compared the fingerprints on the back of state's exhibit number 5, purporting to be the bill of information for case number 254640 (the St. Tammany Parish possession of cocaine conviction), with the prepared fingerprint card and concluded that the defendant was the same person charged and convicted in that case. However, as to case number 873131 (the Jefferson Parish simple burglary conviction), Fullilove compared fingerprints in an arrest register to the fingerprint card prepared on the morning of the hearing. Fullilove concluded that the same person was fingerprinted in both instances. The bill of information and other documentation presented as to the Jefferson Parish conviction did not contain fingerprints.
In State v. Armstead, 542 So.2d 28 (La.App. 4th Cir.1989), writ denied, 566 So.2d 391 (La.1990), the state produced an arrest register with fingerprints on the back of it. There were no fingerprints on the bill of information or minute entries of the guilty plea. However, because there was sufficient information on the documents supporting the conviction to prove the connexity with the arrest register, the court found that the state could use the fingerprints from the arrest register to show that the defendant was the same person who committed the predicate offense. Armstead, 542 So.2d at 30-31.
Similarly, in the instant case, we find the testimony of Fullilove and the details on the arrest register and bill of information, when viewed in the light most favorable to the state, are more than sufficient for reasonable triers of fact to have been convinced beyond a reasonable doubt under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), that the Edward A. Lowery who was arrested on August 28, 1987 for three counts of simple burglary of an inhabited dwelling was the same person as the Edward A. Lowery who was charged with three counts of simple burglary of an inhabited dwelling in bill of information number 873131 and pled guilty under the same case number to simple burglary on April 15, 1988. This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER THREE
In the final pro se assignment of error, the defendant avers that the trial court erred in imposing two sentences pursuant to the multiple offender bill of information. The defendant notes that La. R.S. 15:529.1 permits the imposition of only one sentence and that any sentence imposed prior *727 to the enhanced habitual offender sentence is to be vacated.
The defendant is correct in that the habitual offender proceeding does not charge a new crime but is merely a method of increasing the punishment of second and subsequent offenders. However, in the instant case the defendant was charged with and found guilty of two counts of simple burglary. The penalty for count one was enhanced pursuant to La. R.S. 15:529.1. The second sentence imposed herein, twelve years imprisonment at hard labor, was as to count two and not pursuant to the habitual offender bill of information. We find no error in this regard. This assignment of error clearly lacks merit.

CONCLUSION
The convictions, habitual offender adjudication and sentences are hereby affirmed. This case is remanded with the following instructions: (1) the trial court is directed to give the defendant written notice of the correct prescriptive period for applying for post-conviction relief within ten days of the rendition of this opinion; and (2) the trial court is instructed to file written proof in the record of the proceedings that the defendant has received the notice.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] The original bill of information charged the defendant with one count of simple burglary. The state later amended the bill to add the second count. The record does not include a re-arraignment after the second count was added; however, the defendant's appeal brief states that the defendant entered a not guilty plea to the amended bill of information on the date of the amendment, May 7, 2003.
[2] The minutes state that the sentence imposed in count two is to be served consecutive to the sentence imposed in count one. However, the sentencing transcript states that the sentences are to be served concurrently. When there is a discrepancy between the minutes and the transcript, the transcript must prevail. State v. Lynch, 441 So.2d 732, 734 (La.1983); State v. Rodriguez, 2001-2182, p. 2 n. 2 (La.App. 1st Cir.6/21/02), 822 So.2d 121, 125 n. 2, writ denied, 2002-2049 (La.2/14/03), 836 So.2d 131.
[3] The multiple offender bill of information states that the defendant pled guilty as charged on April 5, 1988 in this predicate. However, although the defendant was initially charged with three counts of simple burglary of an inhabited dwelling (violations of La. R.S. 14:62.2), he actually pled guilty to one count of simple burglary and the other counts were dismissed. Moreover, the guilty plea took place on April 15, 1988 as opposed to the April 5, 1988 date stated in the multiple offender bill of information.
[4] Specifically, the defendant went with the police to his vehicle and indicated that the money was in the glove compartment. An envelope containing $600.00 was found in the glove compartment. The police recovered $93.00 from the defendant's person.
[5] In his brief to this court, the defendant incorrectly indicates that he was adjudged a third felony habitual offender. In fact, as aforementioned, he was adjudged a fourth felony habitual offender.