STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-236

STATE OF LOUISIANA

VERSUS

AUSTIN BLAKE CEASER

************

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 75,429-FB
HONORABLE THOMAS F. FUSELIER, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Marc T. Amy, Billy H. Ezell, and James T. Genovese, Judges.

**AFFIRMED.**

**Pride J. Doran**
**The Doran Law Firm**
**2410 Jake Drive, Suite 1**
**Post Office Box 2119**
**Opelousas, Louisiana 70571**
**(337) 235-3989**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Austin Blake Ceaser**

**Trent S. Brignac**
**District Attorney – Thirteenth Judicial District**
**Kathy Fontenot-Meyers, Assistant District Attorney**
**200 Court Street, Suite 202**
**Post Office Drawer 780**
**Ville Platte, Louisiana 70586**
**(337) 363-3438**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**GENOVESE, Judge.**

On April 29, 2008, the Defendant, Austin Blake Ceaser, was charged with one count of possession of cocaine with intent to distribute, in violation of La.R.S. 40:967; one count of possession of ecstasy with intent to distribute, in violation of La.R.S. 40:966; and, one count of being a convicted felon in possession of a firearm, in violation of La.R.S. 14:95.1. Pursuant to jury trial, the Defendant was found guilty as charged on all counts.

On October 8, 2008, for his conviction of possession of cocaine with intent to distribute, the trial court sentenced the Defendant to serve eighteen years at hard labor with the first two years to be served without benefit of parole, probation, or suspension of sentence. For his conviction of possession of ecstasy with intent to distribute, the trial court sentenced the Defendant to serve eighteen years at hard labor with the first five years to be served without benefits. For his conviction of being a convicted felon in possession of a firearm, the trial court sentenced the Defendant to serve twelve years at hard labor without benefits. The trial court ordered that the two drug penalties run concurrently with each other and that the sentence imposed for the firearm offense run consecutively to the sentences on the two drug convictions. The Defendant was given credit for time served.

The Defendant sought reconsideration of his sentences. After considering the argument made by counsel and a statement by the Defendant, the trial court denied relief.

The Defendant now appeals his convictions and sentences. For the following reasons, we affirm the Defendant's convictions and sentences.

1

## FACTS

Captain Keith Dupre, Chief Investigator for the Evangeline Parish Sheriff's Office, was the first witness to testify at trial in the case against the Defendant. On February 22, 2008, Captain Dupre received a call from the Ville Platte Chief of Police reporting suspected drug activity in a subdivision outside the Ville Platte city limits based on pedestrian traffic between two vehicles, a Pontiac Firebird (Firebird) and a Ford Expedition (Expedition), parked on the side of the road. As a result of the call, Captain Dupre contacted Sergeant Robert Moreau of the Evangeline Parish Sheriff's Office, relayed the information, and asked him to investigate the matter.

Captain Dupre stated that Sergeant Moreau called him when he (Sergeant Moreau) arrived in the subdivision. Sergeant Moreau reported that, as he approached the described vehicles, one of the vehicles, a Ford Expedition parked alongside the road, pulled away and parked in a driveway at 1008 Booker T. Street. Sergeant Moreau also told Captain Dupre that he had spoken to the Defendant, who was the driver of the Expedition, and had asked him for permission to search the vehicle and that the Defendant refused. Captain Dupre responded that he was en route to the location, and he notified Sergeant Orval Hale to meet him there.

Captain Dupre testified that, when he arrived, he observed a maroon Expedition parked in a driveway. He stated that he was approached by Eric Bushnell who informed him that the vehicle was on his mother's property, that he had control of his mother's property, and that he wanted the vehicle off the premises. Mr. Bushnell asked Captain Dupre to remove the vehicle.

Captain Dupre stated that the Defendant was not in the area at the time he was conversing with Mr. Bushnell and that the vehicle parked in the driveway had its

2

doors closed but was unlocked. Defendant had entered the Bushnell residence. Captain Dupre examined the exterior of the home and saw an open window with the screen pushed out. He notified Mr. Bushnell about what he had found. As a result thereby, Mr. Bushnell went through the residence and looked at what Captain Dupre had described. Mr. Bushnell said that he wanted to file charges for the property damage. Captain Dupre stated that the officers began searching for the Defendant outside the Bushnell residence.

Captain Dupre stated that, once Mr. Bushnell requested that the vehicle be removed, someone called a wrecker to remove the vehicle from the driveway. When the wrecker arrived, the officers inventoried the contents of the Expedition. The officers found a plastic bag containing a crack-cocaine-like substance in plain view on the console in the vehicle. The bag and its contents were visible through the windows from outside the vehicle.

Captain Dupre explained that inventory searches are performed and inventory lists are generated as part of standard procedure to protect the contents of the vehicle and to keep the vehicle's owner from accusing the police of removing any items contained therein. He also stated that an inventory is typically performed before the tow truck moves the vehicle.

Captain Dupre listed the other items found in the Expedition: a bag with a white powdery cocaine-like substance, a metal can, a Crown Royal bag, a plastic bag containing "quite a bit of 'X'" pills, a loaded pistol, a digital scale to weigh the drugs for sale, a white-handled knife to cut the cocaine, and two scanners with one turned off and one tuned to the frequency of the Sheriff's Office. Captain Dupre identified the ecstasy pills from his experience with drug enforcement cases. He explained that

3

ecstasy is an illegal drug sold on the street and used by people "to get high," and that it had a large and growing market.

Captain Dupre recalled that the .38 caliber pistol had been on the floorboard by the driver's seat. He explained that the officers found other items in the vehicle that were not contraband, including a picture of the Defendant and his girlfriend on the dashboard near the speedometer. Captain Dupre photographed the inside of the Defendant's vehicle and seized all possible contraband from the vehicle before allowing the wrecker to tow it away.

Captain Dupre stated that, after he obtained an arrest warrant for the Defendant, he turned himself in. He stated that the Defendant owned and had been driving the Expedition.

On cross-examination, Captain Dupre explained that the Defendant was not listed as the owner on the vehicle's title. He stated that the person seen fleeing from the Expedition was the person who was in control of the vehicle. Sergeant Moreau identified the Defendant as the driver of the vehicle. Captain Dupre said no fingerprint evidence was taken and that the Defendant was not arrested at the scene because the officers were unable to catch him and because they had not found the evidence until after the Defendant had left the scene. According to Captain Dupre, the Defendant initially introduced himself to the officers, then went inside the house and left through a window.

Captain Dupre stated that the drugs seized in this case constituted one of his largest drug seizures. There was probably a quarter cookie of crack cocaine seized. He testified that a user does not carry that amount of drugs; instead, the amount seized was a "dealer-amount." Captain Dupre reported that, when he arrived, the

other officers had secured the vehicle and that other people were in the area.

On re-direct examination, Captain Dupre agreed that more than fifty grams was consistent with the amount of cocaine seized. According to Captain Dupre, a gram of cocaine is a lot for someone to buy and that users rarely purchase that much. He stated that people possessing cocaine for personal use never have more than one gram and that someone buying more cocaine is usually providing drugs for a party. He also stated that one hundred dollars will purchase enough cocaine to make a couple of small lines and that fifty grams is worth a lot of money. Captain Dupre testified that there were over 100 ecstasy pills in the seizure, which is not typical for personal use, and that ecstasy is typically sold one pill at a time for ten or twenty dollars for each pill.

Captain Dupre further stated that the Expedition was registered to Darren Ceaser; however, when he contacted Mr. Darren Ceaser, he denied ownership and stated that the Defendant owned the vehicle. Mr. Darren Ceaser gave a statement to the police and agreed to testify that the Defendant owned the vehicle. The Defendant's sister confirmed that information and added that the Defendant was the only person allowed to drive that vehicle.

Mr. Bushnell, who stated that he lived in the Kennedy Subdivision at 1008 Booker T. Street, Ville Platte, Louisiana, was the next witness to testify for the State. Mr. Bushnell clarified that his mother lived at that address while he actually stayed with someone down the street; however, he received his mail at his mother's address. Mr. Bushnell stated that he was friends with the Defendant and that he knew him prior to February 22, 2008. At the time of trial, Mr. Bushnell still considered the Defendant to be a friend. Mr. Bushnell had been unaware that someone entered his

5

mother's house until the officers told him, and he did not believe what the officers said until he saw that one of the windows was up, the screen broken, and the bed pushed aside.

Mr. Bushnell stated that he was in his mother's house when he noticed the maroon Expedition parked in the driveway and the officers near it. Mr. Bushnell did not recognize the vehicle and was concerned that the officers had pulled the vehicle over in his mother's yard. He wanted the Expedition out of the yard because his mother did not approve of such. Mr. Bushnell told the deputies to move the vehicle and that no one had identified himself as the owner of the vehicle. He stated that he was upset that it took so long to remove the Expedition and that the tow truck did not arrive until after the deputies were finished doing "what they had to do." He also stated that people from the neighborhood were standing around the vehicle and observing.[1]

The second day of trial began with the testimony of Sergeant Robert Moreau. Sergeant Moreau responded to a call concerning suspected drug activity from a suspicious vehicle in the Kennedy Subdivision on February 22, 2008. When Sergeant Moreau arrived at the Kennedy Subdivision, he drove down Booker T. Street where he saw a maroon vehicle parked on the left side of the road. When Sergeant Moreau attempted to perform a traffic stop, the operator of the vehicle drove away and turned into a driveway. The Defendant was driving the vehicle, and he had no passengers. The Defendant exited his vehicle, walked to the back of the vehicle, approached Sergeant Moreau, and asked why he was being stopped. At that time, people from the neighborhood began gathering in the vicinity.

---

[1]The testimony of Gene Gabriel Dupre, the Sergeant on patrol, followed the testimony of Mr. Bushnell. He testified as to the chain of evidence.

Sergeant Moreau conversed with the Defendant and explained that the vehicle had been illegally parked. The Defendant stated that he had been talking with his friends; however, he began acting nervous and skittish, and he would not allow Sergeant Moreau near the vehicle. Once Sergeant Moreau called Captain Dupre for assistance, others in the neighborhood began to approach the vehicle. Sergeant Moreau, along with Deputy Sydney Joseph Pelloquin, III, tried to keep the people away, and no one succeeded in entering the vehicle.

Sergeant Moreau reported that, while he was distracted by a conversation with another person, the Defendant left the scene. When Sergeant Moreau looked back, the Defendant was entering the residence at the address where he parked his vehicle. Mr. Bushnell was already out of the house at that time. Sergeant Moreau did not see the Defendant exit the residence. Mr. Bushnell became angry about the damage to the screen and wanted to press charges against the Defendant. Mr. Bushnell also asked the officers to have the automobile towed from the property.

Sergeant Moreau stated that, pursuant to Mr. Bushnell's request, he called for the next available wrecker. While waiting for the wrecker, Sergeant Moreau and Captain Dupre began to inventory the vehicle. Sergeant Moreau did not see any contraband through the window; however, once the door was opened, he observed ecstasy tablets on the driver's seat, crack cocaine, powder cocaine, a Crown Royal bag, a can, a scanner on the sheriff's office frequency, a gun beside the driver's seat, a digital scale, and a photograph of the Defendant and a woman beside the speedometer. Sergeant Moreau explained that the sheriff's office made a log of the contraband, took photographs, bagged the evidence, and turned the matter over to the investigator, Captain Dupre.

7

Sergeant Moreau explained that he learned the scanner was on the sheriff's office frequency when the wrecker responded to his call and that this was consistent with information given to the sheriff's office several months before, i.e., that drug dealers were using scanners to monitor the location of law enforcement officers.

On cross-examination, Sergeant Moreau recalled that the crack cocaine had been in separate packages. He denied finding any money in the automobile.

Mr. Darren Ceaser testified that the Defendant was his first cousin and that he saw him regularly before the Defendant was arrested on drug charges. Mr. Darren Ceaser stated that the Defendant had a maroon Ford Expedition. He learned that the Defendant had purchased the vehicle a week after the Defendant bought it. The Defendant told him that he had titled the car under the name of Darren Ceaser. When the State asked Mr. Darren Ceaser what reason he thought that the Defendant had titled the vehicle under his name, he replied, "Can't really say, I don't exactly sure but maybe before he had been convicted for drugs." Mr. Darren Ceaser testified that he never used the vehicle, that he did not know of anyone other than the Defendant driving the vehicle, and that the Defendant told everyone that the vehicle was his.

Deputy Pelloquin, also of the Evangeline Parish Sheriff's Office, testified that he assisted Sergeant Moreau in the traffic stop of the Expedition on Booker T. Street. He stated that, when he arrived, the Expedition was parked in a driveway at the corner of Booker T. and Robert F. Kennedy streets and that Sergeant Moreau was speaking with the Defendant. While Sergeant Moreau and the Defendant conversed, Deputy Pelloquin stated that he secured the scene. Deputy Pelloquin further stated that no one entered the vehicle. Deputy Pelloquin testified that the Defendant went into the residence after lingering at the scene for a few additional moments. Captain Dupre

arrived shortly thereafter, and Deputy Pelloquin left the scene.

Amanda Hebert, a forensic chemist with the Acadiana Crime Lab, testified that the crime lab received one plastic bag containing five pieces of rock-like material, a plastic bag containing white powder, and another plastic bag containing tablets of different colors. She stated that tests performed by the crime lab showed that the bags contained three grams of crack cocaine, 51.6 grams of powder cocaine, and ecstasy tablets.

The trial court read the following stipulations into the record before the jury:

> By the Court: The parties have agreed to a stipulation rather than calling several other witnesses or a couple of other witnesses and I'm going to read the stipulation. You are to accept the facts that I read to you as being proven at this point and agreed to by both parties. It is stipulated that Austin Blake Ceasar was previously convicted on April the 3rd 2004[,] in Docket number 64,521-FB, of Distribution of Crack-Cocaine. He was also convicted on April the 3rd 2004[,] in Docket number 65512-F[,] of Possession With Intent to Distribute Crack-Cocaine and Possession of Marijuana. Both of these crimes are classified as felonies under LA law. It is further stipulated that a period of ten years from date of completion of sentence, probation, parole, or suspension of sentence has not elapsed since the defendant has been convicted of the felonies described above. Let the stipulation be made part of the record.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent.

The trial court failed to impose a mandatory fine for the Defendant's conviction of possession of a firearm by a convicted felon. In addition to imprisonment, La.R.S. 14:95.1 requires the imposition a fine of not less than one thousand dollars nor more than five thousand dollars. The trial court's failure to impose a mandatory fine renders the Defendant's sentence illegally lenient; however, this court will not

address this illegally lenient sentence because it was not raised as an error. *State v. Jacobs*, 08-1068 (La.App. 3 Cir. 3/4/09), 6 So.3d 315.

## ASSIGNMENT OF ERROR NO. 2[2]

The Defendant argues, "The evidence was insufficient to support the verdict of guilty of felon in possession of a firearm." He asserts that there was insufficient evidence admitted at trial to prove he possessed the items recovered from the vehicle which did not have the Defendant's name on the title. The Defendant alleges that the State failed to prove his constructive possession of the firearm because it failed to prove his awareness of the weapon and his intent to possess it. The Defendant contends that the prosecution failed to present any evidence linking the weapon to him, other than its presence in the vehicle.

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the *Jackson*[3] standard of review. It is not the function of an appellate court to assess credibility or re-weigh the evidence.

*State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86 (citations omitted).

A defendant is a felon in possession of a firearm if he meets the following criteria:

> A. It is unlawful for any person who has been convicted of . . . any violation of the Uniform Controlled Dangerous Substances Law which

---

[2]"When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence." *State v. Hearold*, 603 So.2d 731, 734 (La.1992).

[3]*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

is a felony, . . . to possess a firearm or carry a concealed weapon.

. . . .

C. Except as otherwise specifically provided, this Section shall not apply to the following cases:

(1) The provisions of this Section prohibiting the possession of firearms and carrying concealed weapons by persons who have been convicted of certain felonies shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence.

(2) Upon completion of sentence, probation, parole, or suspension of sentence the convicted felon shall have the right to apply to the sheriff of the parish in which he resides, or in the case of Orleans Parish the superintendent of police, for a permit to possess firearms. The felon shall be entitled to possess the firearm upon the issuing of the permit.

(3) The sheriff or superintendent of police, as the case may be, shall immediately notify the Department of Public Safety, in writing, of the issuance of each permit granted under this Section.

La.R.S. 14:95.1 (footnote omitted).

The elements necessary to sustain a conviction under LSA-R.S. 14:95.1 are: (1) possession of a firearm, (2) prior conviction for an enumerated felony, (3) absence of the ten-year statutory limitation period, and (4) the general intent to commit the crime. Actual possession of a firearm is not necessary to satisfy the possession element of the statute; it is sufficient that the subject had constructive possession. A person is in constructive possession of a thing if it is subject to his dominion and control. A person's dominion over a weapon constitutes constructive possession even if it is only temporary in nature and even if control is shared. The jurisprudence additionally requires proof that the offender was aware that a firearm was in his presence, and that he had the general criminal intent to possess the weapon.

*State v. Lee*, 02-704, p. 5 (La.App. 5 Cir. 12/30/02), 836 So.2d 589, 593, *writ denied,*

03-535 (La. 10/17/03), 855 So.2d 755 (footnotes omitted).

The evidence most favorable to the prosecution shows that the Defendant had

prior felony drug convictions; that ten years had not lapsed since the Defendant

finished serving his sentences for those felony drug convictions; that the Defendant

11

owned the maroon Ford Expedition even though his name was not on the title; that the Defendant was the driver and sole occupant of the Expedition when law enforcement first encountered the vehicle in the Kennedy Subdivision; that the Defendant drove and parked the Expedition; that, when the Defendant exited the vehicle, he went to the back of the vehicle and acted in a manner that led at least one of the officers to believe that he did not want the officers near the vehicle; that, after the Defendant fled the scene, the sheriff's office found a loaded handgun wedged between the driver's seat and the center console; and, that no other person entered the vehicle from the time an officer first observed the Defendant parked on the side of the road until the officers performed an inventory search of the Defendant's Expedition.

The fifth circuit has found sufficient evidence to affirm a conviction for possession of a firearm by a convicted felon in similar circumstances:

> In the present case, defendant stipulated to the fact that he was a convicted felon and that his conviction was within the ten year period. Thus, at trial, the state was only required to prove possession and intent. It is undisputed that the defendant was driving the vehicle when it was stopped by the officers. Moreover, when the officer ordered the defendant to exit the car, he quickly complied, slammed the door shut, and went to the rear of the vehicle. The officers subsequently opened the car door and observed the gun on the driver's side sticking out from between the seat and the console. The gun was thereafter found to contain a live round of ammunition.

*State v. Curtis*, 99-45, pp. 21-22 (La.App. 5 Cir. 7/27/99), 739 So.2d 931, 945.

Accordingly, we find this assignment of error is without merit.

**ASSIGNMENT OF ERROR NO. 3**

The Defendant claims, "The evidence was insufficient to support the finding that Mr. Ceaser 'possessed' or 'intended to distribute' the narcotics found in the 2001 Expedition." He contends that the State failed to prove that he possessed the drugs because the evidence shows that people other than himself had access to the vehicle

12

before the police arrived, and that there was a group of people gathered around the car.

The Defendant additionally asserts that the prosecution failed to prove that he had the intent to distribute the drugs. He asserts that Chief Dupre's testimony that the drugs were more than what was typical for personal use was insufficient to support a finding that he had the intent to distribute because Chief Dupre was not qualified as an expert. Although the Defendant now complains that Chief Dupre offered an opinion as to his guilt, no such objection was made at trial on that issue;[4] therefore, it will not be considered by this court.

Under La.R.S. 40:966(A)(1) and La.R.S. 40:964(I)(C)(10), "it shall be unlawful for any person knowingly or intentionally: (1) To . . . possess with intent to . . . distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule I[,]" such as "3,4-methylenedioxymethamphetamine (MDMA)." Likewise, under La.R.S. 40:967(A)(1) and La.R.S. 40:964(II)(A)(4), "it shall be unlawful for any person knowingly or intentionally: (1) To . . . possess with intent to . . . distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II[,]" such as cocaine or a cocaine base.

In *State v. Scott*, 00-113 (La.App. 3 Cir. 6/7/00), 768 So.2d 112, this court held that constructive possession of illicit drugs was sufficient to establish the possession element of drug offenses. Such constructive possession requires a showing that the substance was either within the defendant's control and dominion or in the defendant's shared possession with another person. *Id*. Several factors may be considered by the trier of fact in determining whether the contraband was within the

_____

[4]*See* La.Code Crim.P. art. 841; Uniform Rules—Courts of Appeal, Rule 1–3.

13

defendant's constructive possession:

> the defendant's knowledge that illegal drugs are in the area; the defendant's relationship with the person who has physical possession of the drugs [in shared possession cases]; the defendant's access to the area where the drugs were found; evidence of recent drug use by the defendant; the defendant's physical proximity to the drugs; and evidence that the residence [or other location] was frequented by drug users.

*Id.* at 114.

In *State v. Williams*, 01-644 (La.App. 5 Cir. 11/27/01), 802 So.2d 909, the fifth circuit examined whether a defendant possessed illicit substances in a similar case. A state trooper attempted to stop a vehicle with illegal window tint. When the officer caught up with the vehicle, he found the vehicle parked in a business parking lot with the defendant walking away from the vehicle and entering the store. The officer blocked the automobile with his unit and entered the store behind the defendant. The store clerk stated that the defendant had left; the trooper was then unable to locate the defendant. Inside the car, the officer found four rocks of crack cocaine in a cupholder located on the center console. The fifth circuit determined there was sufficient evidence presented to establish the defendant's possession of the drugs; notably, the defendant had been driving the car, and the cocaine had been clearly visible to the driver. The fifth circuit additionally stated that the defendant's abandonment of his vehicle and leaving the scene allowed the factfinder to reasonably infer the defendant's guilty knowledge.

In *State v. Moore*, 40,311, pp. 3-4 (La.App. 2 Cir. 1/13/06), 920 So.2d 334, 339, *writ denied*, 06-2267 (La. 6/1/07), 957 So.2d 167 (citations omitted), the second circuit discussed intent to distribute:

> When the specific intent to distribute a controlled dangerous substance is based on circumstantial evidence, the state must prove the amount of the substance, and/or the manner in which it was carried was

14

inconsistent with personal use. Intent to distribute illegal drugs may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of intent to distribute.

The test for determining whether intent to distribute exists includes five factors: (1) packaging in a form usually associated with distribution; (2) evidence of other sales or attempted sales by the defendant; (3) a large amount or quantity of the drug such as to create an inference of intent to distribute; (4) expert or other testimony that the amount was inconsistent with personal use; and (5) the existence of any paraphernalia such as [b]aggies or scales, evidencing an intent to distribute. Testimony of street value and dosage of the drug is also relevant to the issue of intent.

In *State v. McGinnis*, 07-1419, p. 14 (La.App. 3 Cir. 4/30/08), 981 So.2d 881, 892, this court found sufficient evidence to support a finding that the defendant possessed cocaine with intent to distribute:

The Defendant herein admitted that the 30.7 grams of cocaine in his car belonged to him and that he sold drugs. Additionally, police found a weight scale in the Defendant's car. Furthermore, the Defendant had a prior conviction for possession with intent to distribute CDS Schedule II, cocaine. There was no testimony in the case at bar that the amount of cocaine found by police was not consistent with personal use, but the trial court was able to view the cocaine, as it was admitted as an exhibit at trial. The evidence, when viewed in the light most favorable to the State, supports the Defendant's conviction for possession with intent to distribute CDS Schedule II, cocaine.

In the instant case, the evidence most favorable to the prosecution shows: (1) that the officers responded to a call concerning suspected drug activity based on two vehicles parked alongside a neighborhood road with a high volume of foot traffic approaching and retreating from the vehicles; (2) that the Defendant owned the maroon Ford Expedition, which was one of the reported vehicles, even though his name was not on the title; (3) that the Defendant was the driver and sole occupant of the Expedition when law enforcement first encountered the vehicle in the Kennedy Subdivision; (4) that the Defendant moved, then parked, the Expedition; (5) that,

15

when the Defendant exited the vehicle, he went to the back of the vehicle and acted in a manner that led at least one of the officers to believe that the Defendant did not want the officers near the vehicle; (6) that the officers recovered a scanner tuned to monitor the activities of the sheriff's office; and, (7) that no other person entered or exited the vehicle from the time the first officer initially observed the Defendant parked on the side of the road until the officers performed an inventory search of his Expedition. Moreover, the Defendant had prior convictions for distribution and possession with intent to distribute illicit substances.

Additionally, after the Defendant fled the scene, the sheriff's office found a clear plastic bag containing more than 100 ecstasy tablets, "3,4-methylenedioxy methamphetamine (MDMA)," on the front passenger seat. La.R.S. 40:964(I)(C)(10). Testimony at trial revealed that the amount of ecstasy was unusual for personal use because the tablets are typically sold individually for ten or twenty dollars each.

The evidence most favorable to the prosecution also shows that, after the Defendant fled the scene, the sheriff's office found three grams of crack cocaine, to wit, cocaine base, lying atop the center console and over fifty-one grams of powder cocaine on the front passenger seat. The testimony at trial revealed that the amount of cocaine was unusual for personal use. The officers also recovered additional indicia of drug distribution such as a digital scale and a knife which is used to cut cocaine. Additionally, if sold, the fifty grams of cocaine would have yielded a significant sum of money.

After a thorough review of the record, we find that the evidence presented at trial, when viewed in the light most favorable to the prosecution, was such that any rational trier of fact could have found the essential elements of the drug offenses

16

proven beyond a reasonable doubt. The Defendant was knowingly in possession of both cocaine and ecstasy. Additionally, the amount of drugs, the distribution paraphernalia present in the vehicle, the Defendant's prior convictions for distribution and possession with intent to distribute drugs, as well as the circumstances leading up to the investigation, when viewed altogether, would have allowed a rational trier of fact to reasonably infer the Defendant's intent to distribute.

Accordingly, this assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 1

Defendant complains that, "The trial court erred in failing to grant Mr. Ceaser's Motion to Suppress [Evidence]." The Defendant argues that there was insufficient cause to justify detaining and interrogating him on February 22, 2008.

In his Motion to Suppress Evidence, the Defendant argued that there was insufficient justification and a complete lack of reasonable suspicion for a *Terry*[5] stop of his vehicle. The Defendant complained that the only suspicious activity reported was two black males talking to each other in a black neighborhood. The Defendant claimed that the only reason the officer called for assistance was due to his race, which means the call for assistance constituted glaring racial profiling. The Defendant asserted that, because the stop was unconstitutional, all evidence seized pursuant to this "unconstitutional" stop should have been suppressed.

The trial court conducted a hearing on the Defendant's Motion to Suppress Evidence on July 10, 2008. The defense began by alleging that the motion to suppress sought to suppress all drugs, weapons, paraphernalia, as well as any other evidence seized from any vehicle the Defendant was alleged to have been driving on

---

[5]In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968), the United States Supreme Court held that reasonable suspicion was required for an officer to conduct an investigatory stop.

the day in question. The defense asserted that there was no activity justifying a *Terry* stop of the Defendant's vehicle.

The defense called Captain Keith Dupre to testify. Captain Dupre testified that he received a telephone call from Chief Neil Lartigue who advised him that there was suspicious activity going on at the corner of Booker T. Street involving a maroon Expedition and a Firebird. Captain Dupre read into the record his report on the matter:

> A. It'd be in the report. It's on February the 22nd, 2008[,] at approximately 4:30 p.m., I, Captain Dupre, Keith Dupre, with the Evangeline Parish Sheriff's Office[,] contacted Sergeant Robert Moreau[,] also with the Evangeline Parish Sheriff's Office[,] about some suspicious activity. I, Detective Dupre, advised Sergeant Moreau that a maroon Ford Expedition along side another vehicle on the corner of Booker T[.] and Robert F. Kennedy in the Kennedy Sub[.] was possibly selling drugs.

Captain Dupre stated that Chief Lartigue's information included the fact that there had been some traffic going back and forth between the two vehicles parked on the roadside. Captain Dupre explained that he had not personally observed these activities; instead, he sent Sergeant Robert Moreau. Captain Dupre noted that he had not included in his report that the information initially came from Chief Lartigue.

The State moved to dismiss the motion to suppress on the basis that the defense failed to introduce evidence that would show or tend to show that any of the evidence was seized pursuant to a stop or that the arrest made by Captain Dupre was in any way unconstitutional or unjustified. After the defense argued that the Defendant had been stopped because the activity occurred in a black neighborhood, the State responded that the defense had failed to prove there had been a stop of any sort and that the defense presented no evidence showing how the evidence was seized. The State added that, alternatively, there had been no stop because the Defendant parked

18

his vehicle and approached the officers. The State contended that, after speaking with the officers, the Defendant abandoned his vehicle and ran away and that the police never detained him. The State added that the vehicle was towed solely at the request of the homeowner and that the removal of the vehicle required that its contents be inventoried. Consequently, the State argued that there had been no *Terry* stop.

The trial court found that Captain Dupre's testimony did not include any information concerning a stop and that he had sent someone to investigate a report of suspicious activity. The trial court held,

> That's all I heard. That's all the evidence. I don't see anything [un]constitutional about that. I've heard argument from Mr. Savoy about what he alleges, but no evidence. I've heard arguments from Mrs. Kathy about what actually happened, but no evidence. I've got nothing before me that would cause me to suppress anything. I think it's perfectly legal and constitutional for the Chief of Police to ask the Sheriff's Department to go and check out some activity outside of the city limits. He didn't request any action other. . . in terms of arrest or stopping. . . He just said that there might be some criminal activity [and] requested them to go check it out. The officer was asked to do that. I don't see anything unconstitutional about that.

Based on these findings, the trial court denied the motion to suppress.

Under La.Code Crim.P. art. 703,

> A. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.
>
> . . . .
>
> D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.

"Once a defendant makes an initial showing that a warrantless search or seizure occurred, the burden of proof shifts to the state to affirmatively show it was justified

19

under one of the narrow exceptions to the rule requiring a search warrant." *State v. Lowery*, 04-802, p. 6 (La.App. 1 Cir. 12/17/04), 890 So.2d 711, 717, *writ denied*, 05-447 (La. 5/13/05), 902 So.2d 1018. Louisiana Code of Criminal Procedure Article 703 "has been construed in light of United States Supreme Court decisions to mean that once the defendant makes the initial showing at a motion to suppress hearing that a warrantless search occurred, the burden [then] shifts to the state. . . ." *State v. Bazile*, 386 So.2d 349, 353 (La.1980).

At the motion to suppress hearing, the defense failed to make an initial showing that there had been any sort of search or seizure in the instant case. Therefore, the trial court did not err in denying the Defendant's motion to suppress.

In his brief to this court, the Defendant adds a new argument by contending that there was insufficient justification for conducting an inventory search of his vehicle. He admits that his motion to suppress filed with the trial court does not mention the illegality of the inventory search and alleges that the officers admitted that they had no reason to arrest him prior to the wrecker being called. The Defendant argues that, under *State v. Anderson*, 377 So.2d 837 (La.1979), a warrantless search of a vehicle may not be made legal by a police policy requiring an inventory search where impoundment or inventory is unnecessary. It is noteworthy that the Defendant did not raise this claim at any time in the trial court.

"An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." La.Code Crim.P. art. 841(A). "The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise." Uniform Rules—Courts of Appeal, Rule 1–3. This is not

a reviewable issue because it "was not raised below and, therefore, [was] neither addressed by the State nor considered by the trial court. This argument was not properly preserved for review by this court." *State v. Chesson*, 03-606, p. 11 (La.App. 3 Cir. 10/1/03), 856 So.2d 166, 175, *writ denied*, 03-2913 (La. 2/13/04), 867 So.2d 686.

Accordingly, this assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 4

The Defendant asserts that, "The sentences for the narcotics convictions were excessive." The Defendant complains that the trial court failed to adequately consider the factors set forth in La.Code Crim.P. art. 894.1. In his motion to reconsider sentence, the Defendant alleged that his sentences were excessive and requested a reduction "to a term compliant with [La.Code Crim.P. art.] 894.1, and warrant[ed] in light of the particular circumstances of the case. See [*State v. Robinson*], 98-1606 (La.App. 4 Cir. 08/11/99); 744 So.2d 119."

This court has previously discussed the standard for reviewing excessive sentence claims:

> [Louisiana Constitution Article] I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*State v. Barling*, 00-1241, 01-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331 (citations omitted).

In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case."

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061 (citations omitted). "While the trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1[;] the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688, 698 (La.1983).

The trial court sentenced the Defendant after considering the Defendant's presentence investigation report and a statement by the Defendant admitting wrongdoing and pleading for mercy, as well as argument by defense counsel that the trial court should be lenient so the Defendant could participate in raising his six-year-old daughter.

> **BY THE COURT:** My problem is, this is just in response to what Mr. Ceaser said and what Mr. Doran said. I have nothing against Mr. Ceaser personally and I don't know Mr. Ceaser. The problem with that is, Mr. Ceaser's asking me. . .he took the wrong road. . .asking me to not take him away from his family. In my opinion, I'm not taking him away from his family. He took himself away from his family. He's the one that that [sic] did that.
>
> . . . .
>
> **BY THE COURT:** So I mean, if you'd look at it, he's facing approximately seventy-five years. . . [.]

22

. . . .

**BY THE COURT:** . . .that he could be sentenced to. And, uh, I feel that I have taken into consideration uh what you have suggested, what Mr. Ceaser suggested, but I also have to take [into] consideration the law and the people in Evangeline Parish and making sure that our city street[s] are safe with regard to drugs. And also the fact that Mr. Ceaser is not a first time offender. That's part of our problem. Having heard all of that, let me proceed. The court is called upon to sentence the defendant, Mr. Austin Blake Ceaser[,] who was convicted by a jury of his peers of Possession with Intent to Distribute Cocaine, Possession with Intent to Distribute Ecstasy, [and] Possession of a Firearm by a Convicted Felon. In arriving at a sentence, the court has carefully considered the Pre-Sentence Investigation Report and all the sentencing guidelines of Louisiana Code of Criminal Procedure Article 894.1. Specifically the court considered the fact that the defendant has an extensive criminal record including prior convictions for Distribution of Crack Cocaine, Possession with Intent to Distribute Cocaine, Possession of Marijuana, Possession of Cocaine, and Possession with Intent to Distribute Marijuana. Mr. Ceaser has also had his parole and probation revoke[d] in the past for failure to comply. Obviously probation has not worked and will not work. It is the opinion of the court that Mr. Ceaser cannot function properly in society and is in need of additional correction[al] treatment and a custodial environment as provided by his commitment to a penal institution. A modest sentence would greatly deprecate the seriousness of the defendant's offenses. The court therefore imposes a sentence of eighteen years at hard labor with regard to the charge of Possession with Intent to Distribute Cocaine with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence. With regard to the charge of Possession [with Intent] to Distribute Ecstasy, Mr. Ceaser is sentenced to serve eighteen years at hard labor with the first five years of said sentence to be served without benefit of parole, probation, or suspension of sentence. These sentences shall run concurrently with each other. . .together. With regard to the crime of Possession of a Firearm by a Convicted Felon, Mr. Ceaser is sentenced to serve twelve years at hard labor without benefit of probation, or suspension of sentence. This sentence shall run consecutively with the sentence imposed immediately before this one. Defendant's sentence has not been enhanced pursuant to any article or statute. Defendant is given credit for time served with regard to [the] crimes for which he is sentenced today. . . .

At the Defendant's motion to reconsider sentence, defense counsel emphasized the Defendant's youth, the nominal amounts of drugs involved in the Defendant's prior convictions, and the fact that he had been sentenced to eighteen years on the

23

instant drug offenses.  Based on these factors, the defense requested a reduction of the penalties imposed.  The sentencing court denied the request:  "I didn't come. . . arrive at that sentence lightly.  I considered a lot of things, and Mr. Ceaser could have served a lot more time than I gave him had I wanted to be really hard.  So, I respectfully decline the request. . . ."

Under La.R.S. 40:967(B)(4)(b), the sentencing range for possession with intent to distribute cocaine is "a term of imprisonment at hard labor for not less than two years nor more than thirty years, with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence. . . ."  Thus, the Defendant's eighteen-year sentence at hard labor with the first two years to be served without benefits falls within the statutory sentencing range for the offense.  Given the twenty-eight-year sentencing range, the Defendant's sentence is less than sixty percent of the maximum possible unenhanced penalty, which is mid-range.

This court has previously affirmed a twenty-five-year sentence for possession with intent to distribute cocaine in a case where the defendant had multiple prior drug convictions, had prior probation or parole revocations, and had experienced a difficult childhood and drug addiction. *State v. Colar*, 04-1003 (La.App. 3 Cir. 2/2/05), 893 So.2d 152.  This court further noted that, as a multiple offender, the defendant could have been sentenced to up to sixty years under the habitual offender statute.

Considering the Defendant's criminal history (including his multiple prior drug convictions), the amount of cocaine in the Defendant's possession, and the presence of a firearm in the vehicle, we find that this sentence is not excessive.

Under La.R.S. 40:966(B)(2), the sentencing range for possession with intent to distribute ecstasy is "a term of imprisonment at hard labor for not less than five

years nor more than thirty years, at least five years of which shall be served without benefit of parole, probation, or suspension of sentence. . . ." Thus, the Defendant's eighteen-year sentence at hard labor with the first five years thereof to be served without benefits for this offense also falls within the statutory sentencing range. Given the twenty-five-year sentencing range, this penalty is between forty and sixty percent of the maximum unenhanced sentence allowable under this statute, which is mid-range.

Considering the Defendant's criminal history (including his multiple prior drug convictions), the amount of ecstasy in the Defendant's possession, and the presence of a firearm in the vehicle, we find that this sentence is not excessive.

Under La.R.S. 14:95.1(B), the sentencing range for possession of a firearm by a convicted felon is imprisonment "at hard labor for not less than ten nor more than fifteen years without the benefit of probation, parole, or suspension of sentence . . . ." Thus, the Defendant's twelve-year sentence at hard labor for possession of a firearm by a convicted felon falls within the parameters of the penalty provision for that offense. Given the five-year range, the Defendant's sentence is forty percent of the maximum penalty for the offense, which is low-range.

The second circuit has determined that a twelve-year sentence for possession of a firearm by a convicted felon was not excessive and did not shock one's sense of justice when the firearm conviction arose in conjunction with a second offense. *State v. Hawkins*, 32,737 (La.App. 2 Cir. 10/27/99), 743 So.2d 892. Although the offense in *Hawkins* was burglary of a vehicle, we find that Mr. Ceaser's conviction for being a felon in possession of a firearm also arose in conjunction with two felonies for which he was convicted. Therefore, we find that this sentence is not excessive.

25

In light of the Defendant's extensive criminal history, the trial court's reasons for ruling, the Defendant's habitual offender status, the presence of drugs and paraphernalia in the vehicle, and the sentences imposed in other cases of this nature, we find that the trial court did not abuse its discretion in sentencing the Defendant. Accordingly, this assignment of error is likewise without merit.

## DECREE

The Defendant's convictions and sentences are affirmed in their entirety.

**AFFIRMED.**