# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 11-156

**STATE OF LOUISIANA**

**VERSUS**

**LUKE MATTHEW BIVENS**

**********

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 10-253
HONORABLE WARREN DANIEL WILLETT, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Phyllis M. Keaty, Judges.

**AFFIRMED WITH INSTRUCTIONS.**

Carey J. Ellis, III
Louisiana Appellate Project
P. O. Box 719
Rayville, LA 71269
Telephone: (318) 728-2043
COUNSEL FOR:
    Defendant/Appellant - Luke Matthew Bivens

Hon. James Patrick Lemoine
District Attorney – Thirty-Fifth Judicial District Court
James D. White, Jr.
Assistant District Attorney – Thirty-Fifth Judicial District Court
P. O. Box 309
Colfax, LA 71417
Telephone: (318) 627-2971
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

**THIBODEAUX, Chief Judge.**

After a jury trial, Luke Matthew Bivens was found guilty of possession with intent to distribute cocaine, a violation of La.R.S. 40:967(A)(1), and not guilty of illegal carrying of weapons, a violation of La.R.S. 14:95(E). Bivens was sentenced to serve twelve years at hard labor, with credit for time served, to run consecutively to any other sentence. Bivens was also ordered to pay court costs and $1,000.00 to the Public Defender's Office. Bivens's motion to reconsider was denied. Bivens appealed through counsel and pro se asserting various errors. For the following reasons, we affirm with instructions.

I.

**ISSUES**

We shall consider whether:

(1) there was sufficient evidence to convict Bivens of cocaine possession with intent to distribute where 1.2 grams of crack cocaine was recovered in the vehicle Bivens was operating, where $4,452.00 was recovered from Bivens's person, and where an expert in investigation, use, and distribution of crack cocaine testified that the circumstances of this case were not consistent with a "use of cocaine" case;

(2) the trial court erred by not considering Bivens's pretrial motions where:

    a. Bivens filed three motions to suppress and two motions to quash more than fifteen days after his arraignment and did not address why he should be allowed additional time to file his motions;

    b. Bivens filed a motion to change venue alleging racial profiling without identifying any specific incidences of facts upon which he based his motion;

(3) Bivens's sentence is excessive where Bivens received twelve years at hard labor and the maximum sentence for his conviction was thirty years at hard labor and a fine of up to $50,000.00;

(4) Bivens had a seventy-two-hour bond hearing where there is no transcript of the hearing in the record, but the minutes reflect that a hearing was held;

(5) Bivens waived the bill of information's errors of form where Bivens did not object to the bill based on the errors;

(6) this court needs to consider an allegedly illegal investigatory stop where Bivens did not move to suppress the evidence found during the stop;

(7) the prosecution used peremptory strikes illegally where all six African-American potential jurors in the thirty-six-member jury pool were excluded from the jury;

(8) a laboratory report is admissible without testimony where Bivens did not object at trial to the admission of the report;

(9) this court should consider Bivens's request to recover money the police seized from his person where he did not motion the trial court for the return of his money;

(10) this court should consider alleged errors in the State's appellate brief where Bivens did not allege any trial errors;

(11) this court should consider Bivens's request to review the voice recordings of all proceedings and compare them to the transcript because of alleged inaccuracies in the transcript where Bivens previously made the same request which this court denied and where Bivens did not raise any new allegations or reasons for the review.

II.

## FACTS

On or about February 23, 2010, a police officer observed Bivens in Colfax, Louisiana, driving a vehicle with a temporary tag the officer did not recognize. Bivens parked at a nearby gas station/convenience store. Before the officer could inquire about the tag, Bivens and a female passenger, Lakeisha Guider, exited the vehicle and entered the store. While in the store, the two did not make a purchase but began to act suspiciously, watching out for the officer. Bivens and Ms. Guider then exited the store and walked directly to a nearby dollar store where they continued to watch the officer. Eventually, Bivens and Ms. Guider returned to the gas station/convenience store but not to the vehicle. The officer left the gas station but continued to monitor the vehicle from the side of the dollar store.

2

Soon thereafter, a second vehicle pulled up, and Bivens and Ms. Guider spoke with the driver of the vehicle. After returning to their respective vehicles, all departed the scene. The officer followed Bivens's vehicle. When Bivens spotted the officer, he turned down a side street by the dollar store and returned to the gas station/convenience store. The officer pulled up in front of him and stopped, and Bivens exited his vehicle.

As the officer was speaking with Bivens, the second vehicle returned to the scene. Ms. Guider spoke with the driver, returned to Bivens's vehicle, retrieved a paper bag, and then proceeded toward the other vehicle with the bag. The officer instructed Ms. Guider to bring him the bag. The bag tore as she reached out to hand it to him, and a gun fell out onto the ground. At that time, Bivens and Ms. Guider were taken into custody. The driver of the second vehicle was also detained and was later discovered to be Bivens's brother.

During a pat down, $4,452.00 in cash was found on Bivens. Also, after a K-9 alerted officers to the presence of drugs in the vehicle, a cellophane baggie containing 1.2 grams of crack cocaine was recovered.

III.

## LAW AND DISCUSSION

### *Error Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. There is one error patent concerning Bivens's sentence.

In *State v. Frith*, 561 So.2d 879, 883 (La.App. 2 Cir.), *writ denied*, 571 So.2d 625 (La.1990), the court stated:

> LSA-C.Cr.P. articles 895 and 895.1 authorize restitution and payment to the indigent defender program as a condition of probation only when the trial court suspends the imposition or execution of sentence. *State v. Fluitt*, 482 So.2d 906

3

(La.App.2d Cir. 1986); *State v. Starks*, 471 So.2d 1029 (La.App.1st Cir. 1985). In this case, the trial court did not suspend the two year hard labor sentence. For this reason, the portion of the sentence ordering restitution and payment to the indigent defender program is illegal. Therefore, we further correct the sentence to delete that portion ordering restitution and payment to the indigent defender program. C.Cr.P. art. 882.

In *State v. Lozado*, 594 So.2d 1063, 1067 (La.App. 3 Cir. 1992), this court noted:

> Lastly, we bring to the sentencing court's attention the provisions of LSA-C.Cr.P. Arts. 895 and 895.1 which require that before the sentencing court orders the payment of a fee to defray the expenses of probation supervision and the making of restitution to the Indigent Defender Board, it must suspend defendant's sentence.

Here, as part of Bivens's sentence, the court ordered that he pay the Public Defender's Office $1,000.00. Bivens's sentence was not suspended. Accordingly, this court deletes the provision of Bivens's sentence requiring payment to the Public Defender's Office and instructs the trial court to make an entry in the court minutes reflecting the change.

### *(1) Sufficiency of Evidence*

There is sufficient evidence for conviction if the appellate court determines that "the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Hobley*, 98-2460, p. 33 (La. 12/15/99), 752 So.2d 771, 790, *cert. denied*, 531 U.S. 839, 121 S.Ct. 102 (2000).

> Further, when the conviction is based on circumstantial evidence, La.R.S. 15:438 sets forth the rule that "assuming every fact to be proved that the evidence tends to prove, in order to convict, [the circumstantial evidence] must exclude every reasonable hypothesis of innocence." However, La.R.S. 15:438 does not establish a stricter standard of review than the more general rational juror's reasonable doubt formula; rather it serves as a helpful evidentiary guide for jurors when evaluating circumstantial evidence.

4

*State v. Major*, 03-3522, p. 6 (La. 12/1/04), 888 So.2d 798, 801 (citations omitted).

> In addition to assessing the circumstantial evidence in light of the direct evidence, and vice versa, the trier of fact must decide what reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing inferences should be resolved, reconciled or compromised; and the weight and effect to be given to each permissible inference. From facts found from direct evidence and inferred from circumstantial evidence, the trier of fact should proceed, keeping in mind the relative strength and weakness of each inference and finding, to decide the ultimate question of whether this body of preliminary facts excludes every reasonable hypothesis of innocence.

*State v. Chism*, 436 So.2d 464, 469 (La.1983).

### *(a) Actual or Constructive Possession*

To prove the charged offense, the State needed to prove Bivens's possession of the cocaine.

> Possession of narcotic drugs can be established by actual physical possession or by constructive possession. A person can be found to be in constructive possession of a controlled substance if the State can establish that he had dominion and control over the contraband, even in the absence of physical possession.
>
> A determination of whether there is sufficient "possession" of a drug to convict depends on the particular facts of each case. Although mere presence in an area where drugs are located or mere association with one possessing drugs does not constitute constructive possession, this court has acknowledged several factors to be considered in determining whether a defendant exercised sufficient control and dominion to establish constructive possession, including: (1) his knowledge that drugs were in the area; (2) his relationship with the person, if any, found to be in actual possession; (3) his access to the area where the drugs were found; (4) evidence of recent drug consumption; and (5) his physical proximity to drugs.

*Major*, 888 So.2d at 802 (citations omitted).

On appeal, Bivens asserts that the State failed to show he had actual or constructive possession of the drugs. More specifically, Bivens complains that the

State did not show he knew the drugs were in the vehicle or that he had recently used drugs.

The record reveals that Bivens had access to the area where the drugs were found and was in close proximity to the drugs, factors evidencing the exercise of sufficient control and dominion to establish constructive possession.

Trooper Ken Malone with the Louisiana State Police testified that Bivens was the driver of the vehicle where the drugs were recovered. In addition to being the driver, the vehicle belonged to Bivens or he was the custodian of the vehicle, another factor which indicates he had control and dominion over the drugs.

Bivens, a Texas resident, testified he was not the owner of the vehicle. According to Bivens, after making a large down payment, he was allowed to test-drive the vehicle for two days to see if he liked it. He then decided to drive from Texas to New Orleans, Louisiana, his hometown, to get his birth certificate and social security card that were needed to obtain a Texas driver's license. Bivens would then be able to obtain the car insurance required to purchase the vehicle.

Regardless of whether or not Bivens was the "owner" of the vehicle, Bivens was clearly the custodian of the vehicle and in possession of the vehicle at the time the drugs were found. As such, the evidence was sufficient to show that Bivens exercised sufficient control and dominion to establish constructive possession of the drugs.

*(b) Guilty Knowledge*

The State was also required to prove guilty knowledge, an essential element of the crime, which may be inferred from the circumstances.

> Although a conviction for possession of cocaine can stand on the possession of the slightest amount of the drug, the amount of the substance will have some bearing on the defendant's guilty knowledge. *State v. Gaines*, 96-1850, pp. 5-6 (La.App. 4 Cir. 1/29/97), 688 So.2d 679, 682-83, *writ denied*, 97-0510 (La. 9/5/97), 700 So.2d 503; *State v. Spates*, 588 So.2d 398, 401 (La.App. 2 Cir.1991). In

addition, the possession of drug paraphernalia is, because of the items' peculiar nature, indicative of guilty knowledge. *Gaines*, p. 6, 688 So.2d at 683; *Spates*, 588 So.2d at 402. Finally, flight is a circumstance from which guilt can be inferred. *See State v. White*, 535 So.2d 929, 933 (La.App. 2 Cir. 1988), *writ denied*, 537 So.2d 1161 (La.1989).

*State v. Smith*, 98-2645, p. 5 (La.App. 4 Cir. 1/26/00), 752 So.2d 314, 317-18; *see also State v. Hunter*, 09-1487, p. 4 (La.App. 3 Cir. 6/2/10), 41 So.3d 546, 550.

Here, police described the suspicious actions of Bivens and Ms. Guider as they attempted to avoid the vehicle and the police officer prior to their apprehension. Additionally, when the officer began questioning Bivens, Bivens seemed extremely nervous and his voice became elevated as he was questioned. During questioning, Bivens moved from one subject matter to another, making it difficult for the officer to keep up with what Bivens was trying to tell him. According to the officer, Bivens kept looking around as if he were going to flee. Lastly, the officer's suspicion was raised when Ms. Guider tried to move the gun from one vehicle to another, leading him to believe that narcotics were in the vehicle.

### (c) Specific Intent

"Intent is a condition of mind which is usually proved by evidence of circumstances from which intent may be inferred." *State v. Hearold*, 603 So.2d 731, 735 (La.1992) (citations omitted). There are five factors courts consider to determine whether an intent to distribute can be inferred:

> 1) whether the defendant ever distributed or attempted to distribute the drug; 2) whether the drug was in a form usually associated with possession for distribution to others; 3) whether the amount of drug created an inference of an intent to distribute; 4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and 5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.

*Id.*

7

For example, in *State v. Davis*, 06-1330 (La. App. 4 Cir. 4/25/07), 958 So.2d 713, *writ granted in part*, *denied in part*, 07-1208 (La. 12/14/07), 970 So.2d 982, the court found that the presence of an unusually large amount of cash in the defendant's car, $1,000.00, and on the defendant's person, $607.00, along with a loose rock of crack cocaine and eighteen individually wrapped plastic bags, each containing a rock of crack cocaine, within the defendant's vehicle, were indicative of an intent to distribute.

In *State v. Moore*, 40,311 (La.App. 2 Cir. 1/13/06), 920 So.2d 334, *writ denied*, 06-2267 (La. 6/1/07), 957 So.2d 167, evidence that the defendant possessed twenty-seven rocks of crack cocaine, eleven of which were packaged together in a plastic bag, while the remaining sixteen were in a plastic bottle, was found to be consistent with street level distribution. Also, he had no crack pipe on his person to suggest personal use.

Here, Bivens argues that the amount of cocaine recovered, fourteen rocks weighing 1.2 grams, was not large enough to infer intent to distribute. Although he was in possession of $4,452.00, Bivens testified he worked for the money and the State did not show otherwise. Bivens asserts there were no baggies or other items found in which to package cocaine, and no scales were found. Lastly, although Bivens had a history of prior drug offenses, he stated that the evidence did not show that he had ever distributed drugs.

At trial, Detective James was offered and accepted as an expert in the investigation, use, and distribution of crack cocaine. Detective James concluded that the amount of money recovered, the way the crack cocaine was packaged, and the lack of paraphernalia associated with the use of cocaine was not consistent with a "use of cocaine" case. Finally, in 2009, Bivens pled guilty to a Texas charge of unlawful possession with intent to deliver cocaine.

Based on the considerations above, the State did not rely solely on the amount of crack cocaine recovered to create the inference of intent to distribute. Accordingly, this assignment of error is without merit.

### *(2) Failure to Consider Pretrial Motions*

The record reflects that on August 27, 2010, Bivens filed eight *pro se* motions, some of which were dismissed as untimely. Bivens asserts that the trial court erred by dismissing them.

### *(a) Motions to Suppress*

Three of the motions were motions to suppress evidence. The trial court relied on La.Code Crim.P. art. 521 which requires the motions to be filed within fifteen days of arraignment absent a showing of good cause for them being late. The trial court reasoned that because Bivens was arraigned on May 7, 2010 but filed the motions to suppress on August 27, 2010, his motions were untimely, and, therefore, dismissed.

In his motions to suppress, Bivens did not address the untimeliness of his motions or show good cause as to why he should be allowed additional time to file his motions as required by Article 521. Accordingly, the trial court did not err in denying the motions.

### *(b) Motions to Quash*

The trial court construed two other motions as motions to quash. The trial court reasoned that the timing for filing a motion to quash is governed by La.Code Crim.P. art. 535 which lists several grounds upon which the motion could be based.[1] If the motion to quash is based on grounds other than those listed in La.Code

---

[1]Louisiana Code of Criminal Procedure Article 535 reads as follows:

9

Crim.P. art. 535, La.Code Crim.P. art. 521 governs and requires the motion to be filed within fifteen days of arraignment. The trial court concluded that the motions were not based on the grounds listed in La.Code Crim.P. art. 535, and, therefore, La.Code Crim.P. art. 521 applied. Because Bivens's motions to quash did not comply with La.Code Crim.P. art. 521, Bivens waived the grounds upon which his motions were based pursuant to La.Code Crim.P. art. 535(D). Thus, the trial court dismissed these motions.

Bivens asked the trial court to dismiss the charge of illegal carrying of weapons in his first motion to quash. As noted by the trial court, Bivens's motion did not set forth a ground found in sections A or B of Article 535, and, thus, he was required to file the motion in accordance with Article 521, within fifteen days of

A. A motion to quash may be filed of right at any time before commencement of the trial, when based on the ground that:

(1) The offense charged is not punishable under a valid statute;

(2) The indictment does not conform with the requirements of Chapters 1 and 2 of Title XIII;

(3) Trial for the offense charged would constitute double jeopardy;

(4) The time limitation for the institution of prosecution has expired;

(5) The court has no jurisdiction of the offense charged; or

(6) The information charges an offense for which prosecution can be instituted only by a grand jury indictment.

(7) The individual charged with a violation of the Uniform Controlled Dangerous Substances Law has a valid prescription for that substance.

These grounds may be urged at a later stage of the proceedings in accordance with other provisions of this Code.

B. A motion to quash on the ground that the time limitation for commencement of trial has expired may be filed at any time before commencement of trial.

C. A motion to quash on grounds other than those stated in Paragraphs A and B of this Article shall be filed in accordance with Article 521.

D. The grounds for a motion to quash under Paragraphs B and C are waived unless a motion to quash is filed in conformity with those provisions.

E. The court may, in order to avoid a continuance, defer a hearing on a motion to quash until the end of the trial.

10

arraignment. Accordingly, the trial court did not err in denying the motion. Further, Bivens was found not guilty of illegal carrying of weapons, and, thus, any alleged error is now moot.

Bivens's request in his second motion to quash is vague but appears to ask the trial court to quash all the charges against him. He complained that police used improper traffic stop procedures, failed to initiate a legitimate traffic stop, and failed to initiate an investigative stop. Bivens also asserted that he was entrapped, that police failed to maintain a line of sight, that he did not consent to or authorize the search and seizure, and that he was not *Mirandized*. Lastly, Bivens averred that police did not have probable cause or suspicion and there was no prior investigation of suspects to suggest Bivens was involved in criminal activities.

Again, Bivens's motion did not set forth a ground found in sections A or B of Article 535, and, thus, he was required to file the motion in accordance with Article 521, within fifteen days of arraignment. Accordingly, the trial court did not err in denying the motion.

### *(c) Motion for a Change of Venue*

The trial court noted that La.Code Crim.P. art. 621 governs filing of a change of venue motions, which provides that the timing is governed by La.Code Crim.P. art. 521, or, thereafter, is at the court's discretion. The trial court noted that the motion was late under La.Code Crim.P. art. 521. The court declined to grant Bivens leave to file the motion late.

Louisiana Code of Criminal Procedure Article 621 reads as follows:

> A motion for a change of venue may be filed by either the state or the defendant. It shall be filed in accordance with Article 521; or thereafter, in the discretion of the court, any time before the first witness is sworn at the trial of the merits. The motion shall be in writing, sworn to by mover or his counsel, and shall contain:

> (1) Allegations of fact upon which the motion is based; and

11

(2) A statement that the motion is not made for the purpose of delay, but to obtain a fair and impartial trial.

A contradictory hearing shall be held upon the motion.

Here, Bivens asked that the venue be changed "based on alleged racial profiling and the obvious racial indications and overtures" in the case. Bivens did not identify any specific incidences or facts upon which the motion was based. Thus, the trial court did not err in denying the motion.

### (3) Excessive Sentence

"No law shall subject any person . . . to cruel, excessive, or unusual punishment." La.Const. art. 1, § 20.

> To constitute an excessive sentence, this Court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no reasonable contribution to acceptable penal goals and[,] therefore, is nothing more than the needless imposition of pain and suffering. The trial judge has broad discretion, and a reviewing court may not set sentences aside absent a manifest abuse of discretion.

*State v. Guzman,* 99-1528, p. 15 (La. 5/16/00), 769 So.2d 1158, 1167 (citations omitted). The following factors help to decide whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals: "the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment[,] and a comparison of the sentences imposed for similar crimes." *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061 (citing *State v. Smith*, 99-606, 99-2015, 99-2019, 99-2094 (La. 7/6/00), 766 So.2d 501). Although a comparison of sentences imposed for similar crimes can be helpful, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *Id.* (quoting *State v. Batiste*, 594 So.2d 1, 3 (La.App. 1 Cir. 1991)). Because the trial court is in the best position to evaluate the aggravating and mitigating factors of a particular case, "it is

within the purview of the trial court to particularize the sentence." *Id.* Finally, "[a]s a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender." *State v. Hall*, 35,151, p. 4 (La.App. 2 Cir. 9/26/01), 796 So.2d 164, 169 (citing *State v. Grissom*, 29,718 (La.App. 2 Cir. 8/20/97), 700 So.2d 541; *State v. Walker*, 573 So.2d 631 (La.App. 2 Cir. 1991)).

In *State v. Ceaser,* 09-236 (La.App. 3 Cir. 11/4/09), 21 So.3d 1122, *writ denied*, 09-2734 (La. 6/4/10), 38 So.3d 300, this court affirmed an eighteen-year, hard-labor sentence, the first two years without benefit of parole, probation, or suspension of sentence, for possession of cocaine with intent to distribute. The defendant's criminal history included multiple prior drug convictions. He was found in possession of three grams of crack cocaine and over fifty-one grams of powder cocaine; a firearm was in the vehicle where the drugs were found.[2]

In *State v. Chaisson*, 09-119 (La.App. 3 Cir. 10/7/09), 20 So.3d 1166, this court affirmed the defendant's eight-year, hard-labor sentence, the first two years without benefits, for possession with intent to distribute cocaine. The sentence was ordered to run consecutively to sentences imposed for two other offenses that occurred on separate dates.[3] From the defendant's residence, officers recovered 4.5 grams of cocaine in addition to paraphernalia used to sell cocaine. A drug measuring station was also found. The defendant had two prior misdemeanor convictions but no

---

[2] The defendant was also convicted of possession with intent to distribute ecstasy and possession of a firearm by a convicted felon. For possession with intent to distribute ecstasy, he was sentenced to eighteen years at hard labor, the first five years to be served without benefits. For possession of a firearm by a convicted felon, he was sentenced to twelve years at hard labor. The sentences for the drug penalties were ordered to run concurrently with each other, and the sentence for the firearm offense was ordered to run consecutively to the sentences for the drug convictions.

[3] The defendant was also convicted of manufacturing cocaine base and simple possession of cocaine. He was sentenced to ten years at hard labor without benefits for manufacturing cocaine base and to five years at hard labor for simple possession of cocaine, the sentences to run concurrently with each other but consecutive to his sentence for possession with intent to distribute cocaine.

prior felony convictions.  Also, the offense occurred while the defendant was on bond for the two charges arising from an earlier incident.

The penalty for possession with intent to distribute cocaine is two to thirty years at hard labor and a fine of up to $50,000.00.  La.R.S. 40:967(B)(4)(b).  The first two years are to be served without benefit of parole, probation, or suspension of sentence.  Thus, Bivens's twelve-year sentence with the first two years to be served without benefits falls within the statutory sentencing range and is a lower-end sentence, about one-third of the maximum possible sentence.  Additionally, he was spared a substantial fine.

At sentencing and at a hearing on a motion to reconsider sentence, Bivens stated that he had always worked and had never been in trouble with the law in Louisiana involving a felony offense.  The only time he spent in jail was in New Orleans for a misdemeanor, disturbing the peace.  Bivens then moved to Texas after Hurricane Katrina.  Bivens got his GED in Texas and was in trade school to be an air conditioning technician.  He stressed that he had only been convicted of one felony in his life and that he had learned his lesson.  Bivens also stated he had a daughter for whom he paid child support.

At a hearing to reconsider sentence, the trial court stated that at Bivens's original sentencing, it had considered that he had obtained a GED, as well as his work history and job training, and that he had a child to support.  The trial court also considered that Bivens had been placed on probation on two occasions in Texas.  With regard to this conviction, the trial court noted that the evidence at the scene included a gun, a large amount of cash, and a quantity of crack cocaine that did not indicate he was a drug user.   Although the offense was nonviolent, the trial court stated that the offense was a concern to the community, especially with a firearm involved.  Combined with that Bivens had two prior arrests for similar offenses, the

14

trial court opined that Bivens was deserving of a significant period of incarceration, and his motion was denied.

Like the defendants in the above-referenced jurisprudence, Bivens has a prior history of drug offenses, was on probation at the time of this offense, and a firearm was involved. In light of these circumstances and that he received a lower-end sentence, Bivens's sentence is not excessive.

### (4) Bond Hearing

Bivens argues that his rights were violated when the trial court failed to give him a seventy-two-hour bond hearing. He asserts that a bond hearing is required to be voice-recorded into the record and complains there is no such transcript of a hearing in the record.

Louisiana Code of Criminal Procedure Article 230.1 provides:

A. The sheriff or law enforcement officer having custody of an arrested person shall bring him promptly, and in any case within seventy-two hours from the time of the arrest, before a judge for the purpose of appointment of counsel. Saturdays, Sundays, and legal holidays shall be excluded in computing the seventy-two-hour period referred to herein. The defendant shall appear in person unless the court by local rule provides for such appearance by telephone or audio-video electronic equipment. However, upon a showing that the defendant is incapacitated, unconscious, or otherwise physically or mentally unable to appear in court within seventy-two hours, then the defendant's presence is waived by law, and a judge shall appoint counsel to represent the defendant within seventy-two hours from the time of arrest.

B. At this appearance, if a defendant has the right to have the court appoint counsel to defend him, the court shall assign counsel to the defendant. The court may also, in its discretion, determine or review a prior determination of the amount of bail.

C. If the arrested person is not brought before a judge in accordance with the provisions of Paragraph A of this Article, he shall be released forthwith.

D. The failure of the sheriff or law enforcement officer to comply with the requirements herein shall have no

15

> effect whatsoever upon the validity of the proceedings thereafter against the defendant.

The record reflects that Bivens was arrested on February 23, 2010, and was charged with illegal carrying of a weapon with a controlled dangerous substance, possession with intent to distribute a schedule II controlled dangerous substance, possession of a firearm by a convicted felon, and failure to register the vehicle. Although there is no transcript of a seventy-two-hour hearing, the minutes reflect that a hearing was held. On February 25, 2010, per the District Court's order, Bivens was interviewed by the Public Defender's Office to determine if he was indigent, and defense counsel was subsequently appointed. Accordingly, the requirements of Article 230.1 were met, and, thus, this assigned error is without merit.

### (5) The Bill of Information's Form Errors

Bivens argues that his bill of information was not properly filed and was illegally used against him pursuant to La.Code Crim.P. art. 532. Bivens complains that the bill was not based on true facts. He asserts that bill of information filed was not signed by the district attorney. Next, he states that the bill was filed "under a false gender"—white male—when he is a black male. Bivens also claims that the bill reflects a false Texas driver's license number when, according to Bivens, he has never before possessed a driver's license. Lastly, Bivens contends he was illegally charged in count one, maintaining that under La.R.S. 40:967, he must have possessed not less than 28 grams, nor more than 200 grams of cocaine when in fact, he was found in possession of 1.2 grams.

"A motion to quash may be based on one or more of the following grounds: (1) The indictment fails to charge an offense which is punishable under a valid statute." La.Code Crim.P. art. 532(1). "A motion to quash an information may also be based on one or more of the following grounds: (1) The information was not

16

signed by the district attorney; or was not properly filed." La.Code Crim.P. art. 534(1).

In *State v. Lee*, 94-2584, p. 3 (La.App. 4 Cir. 1/19/96), 668 So.2d 420, 424, *writ denied*, 96-477 (La. 5/10/96), 672 So.2d 919, the court stated:

> an indictment shall not be invalid or insufficient because of a defect in form only. La.C.Cr.P. art. 487. The omission of the signature of the district attorney, being a formal defect only, must be taken advantage of before trial by demurrer or motion to quash. *State v. White*, 404 So.2d 1202, 1205 (La.1981); La.C.Cr.P. arts. 534(1), 535. The defendant did not object to the defect prior to trial; it was therefore waived.

The bill of information found in the record was signed by Jimmy D. White, Assistant District Attorney. Also, the caption of the bill located in the top left hand corner reflects, in pertinent part, "GEN: W/M TX DL#8351295." With regard to these alleged errors of form, Bivens did not object to the bill of information based on these errors.[4] Accordingly, these alleged errors of form were waived and, thus, are not properly before this court.

With regard to the remaining alleged error pertaining to the charge of possession with intent to distribute, Bivens incorrectly asserts that the bill of information charged him with the possession of 28 to 200 grams of cocaine, a violation of La.R.S. 40:967(F)(2)(a). The bill of information charged Bivens with violating La.R.S. 40:967(A)(1), possession with intent to distribute cocaine, which does not require proof that he possessed 28 to 200 grams of cocaine. Accordingly, there is no merit to this allegation of error.

---

[4]A "Motion to Quash" was filed on September 17, 2010, alleging that there was no statute to charge the Defendant with illegal carrying of a weapon with a controlled dangerous substance and that La.R.S. 14:95(E) was a sentencing guideline, not a crime. The Defendant also alleged that prosecution for possession with intent to distribute cocaine and prosecution for possession of cocaine and possession of a firearm constituted double jeopardy.

### (6) Legality of an Investigatory Stop

Bivens argues that police did not have probable cause or any reasonable grounds to "act on what they did." Bivens contends that the unjustified investigatory stop was illegal, and the evidence obtained and used against him at trial was a violation of his constitutional rights.

Bivens filed three motions seeking to suppress the evidence for various reasons. None of these motions, however, sought to suppress evidence based on lack of probable cause or reasonable grounds for the police's investigatory stop. Pursuant to La.Code Crim.P. arts. 521 and 703, Bivens was required to move to suppress the evidence within fifteen days after the arraignment or prior to trial upon written motion showing good cause. Accordingly, Bivens did not preserve the issue on appeal, and, thus, the merits of his claim are not considered.

### (7) Legality of the Peremptory Strikes

Bivens argues he was prejudiced by an all-white jury. There were six African-Americans in the thirty-six-member jury pool. Bivens asserts the State intentionally exercised or used peremptory exceptions on all six blacks, leaving Bivens with no jury of peers.

"In *Batson* [*v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986)], the Supreme Court held that an equal protection violation occurs if a party exercises a peremptory challenge to exclude a prospective juror on the basis of a person's race." *State v. Anderson*, 06-2987, p. 41 (La. 9/9/08), 996 So.2d 973, 1004, *cert. denied*, __ U.S. __, 129 S.Ct. 1906 (2009) (footnote omitted); *see also State v. Sarpy*, 10-700 (La.App. 3 Cir. 12/8/10), 52 So.3d 1032, *writ denied*, 11-46 (La. 6/3/11), 63 So.3d 1006.

> A defendant's *Batson* challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory

18

challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."

*Rice v. Collins*, 546 U.S. 333, 338, 126 S.Ct. 969, 973-974 (2006) (citations omitted).

The trial court's findings with regard to a *Batson* challenge are entitled to great deference on appeal. When a defendant voices a *Batson* objection to the State's exercise of a peremptory challenge, the finding of the absence of discriminatory intent depends upon whether the trial court finds the prosecutor's race-neutral explanations to be credible. "Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy."

*Anderson*, 996 So.2d at 1004 (citations omitted).

Prior to the swearing in of the jury, defense counsel raised an objection. The State maintained there was no pattern of racial discrimination. The trial court observed, however, that each African-American that was seated on the panel was either challenged for cause or a peremptory challenge was exercised by the State. This removed every African-American on the potential jury venire. Given the racial make-up of the parish and the initial jury venire, the trial court concluded that Bivens's initial burden of showing a pattern of racial discrimination had been met. Thus, the State was required to provide race-neutral reasons for striking the four African-American potential jurors.

The State indicated that the first juror had an active contempt of court charge through the district attorney's office, and thus, the State did not feel she would make an effective juror. The State did not use a peremptory challenge until the trial

19

court denied its challenge for cause. The second juror, the State claimed, was on a prior jury involving a drug case where she found the defendant not guilty. The State opined that if she had "done that once before," there was a possibility she would do it again. The State preempted the third juror because she worked in Westside Rehabilitation. The State did not want a juror whose employment involved drugs. The State asserted that, initially, it was going to accept the fourth juror. Nevertheless, when questioned regarding her opinion on fairness, she giggled and looked away and could not tell whether she thought the matter was fair or unfair at that time. She did not appear to the State to be taking the matter seriously, she would not make eye contact, and she was squirming in her chair. Thus, the State believed she would not pay attention throughout the trial or form an opinion as to the fairness of the law under which Bivens was being prosecuted. The trial court concluded that the State's reasons for excluding all four potential jurors were race-neutral.

Considering that all of the African-American potential jurors were challenged and prevented from serving on the jury, Bivens, an African-American, did show a prima facia case of discrimination to warrant the trial court's inquiry as to the reasons for their exclusion. Nevertheless, the reasons provided by the State were not inherently discriminatory, and, thus, Bivens did not carry his burden of proving purposeful discrimination with regard to the State's use of its peremptory challenges.

Bivens also complains that during questioning, two of the white potential jurors spoke out loud, saying that they believed Bivens was already guilty, while other jurors shook their heads, indicating that they also believed he was guilty. Although the two potential jurors were excluded from serving, Bivens argues that the other white potential jurors did become a part of his jury. With only twelve peremptory challenges to exclude those he felt would not make an honest and fair decision, Bivens maintains he was unable to choose a fair jury.

First, Bivens did not identify any of the jurors by name with regard to this claim. A review of the record reflects that Bivens did not express any challenges for cause until the third panel. At that time, the defense counsel challenged for cause potential jurors Jeffrey Lavespere and Davis Haas on the basis that both men stated during questioning that Bivens was guilty until proven innocent. The State concurred in the challenges. The trial court found that Mr. Lavespere made the statement that he did not believe in the presumption of innocence and that Mr. Haas stated he had never seen anyone arrested for something they did not do. Both men were then excluded from the jury.

This court could find no evidence in the record to indicate that Bivens attempted to exclude any other jurors for cause or that he objected to a ruling on a challenge for cause. In the absence of a challenge for cause and/or an objection to a ruling on a challenge for cause, there is no issue before this court for review.

Lastly, Bivens claims that he suffered prejudice because the foreperson of the jury, James Woodruff, was a correctional officer, a benefit to the State. Bivens maintains a conflict of interest existed, and, thus, the trial court erred in allowing Mr. Woodruff to participate on the jury. Bivens does not claim, nor does the record reflect, that Bivens sought to exclude Mr. Woodruff from the jury. Accordingly, Bivens's claim is not properly before this court for the first time on appeal. *See* La.Code Crim.P. art. 841.

### (8) *Laboratory Report's Admissibility*

Bivens argues that his conviction should be overturned because the State failed to call Alex King from the Criminalistics Lab. Instead, the State depended solely on the lab report. Bivens contends the lab report does not have enough information to show that the evidence presented against him at trial is the same evidence examined in the report.

21

In *State v. Savoie*, 07-914 (La.App. 3 Cir. 3/5/08), 982 So.2d 119, *writ denied*, 08-617 (La. 10/3/08), 992 So.2d 1011, the defendant did not object to lab reports when they were offered and introduced into evidence at trial. In finding that the defendant failed to preserve his right to challenge the evidence post-verdict, this court referred to La.Code Crim.P. art. 841(A), which provides: "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Additionally, the court noted:

> In *State v. Cunningham*, 04-2200 (La. 6/13/05), 903 So.2d 1110, the supreme court considered the constitutionality of La.R.S. 15:499-501 with regard to the admissibility of a certificate of analysis of laboratory results as prima facie proof of the substance tested without live testimony of the person performing the analysis. After determining that the statutes are not unconstitutional, the court added that the statutes, from a practical standpoint, are no different from hearsay evidence offered at trial. "If defendant does not contemporaneously object, the hearsay is allowed into evidence." *Id.* at 1121.

*Savoie,* 982 So.2d at 123.

Here, Bivens did not object at trial to the admission of the report on the basis that the State did not call the analyst to testify.[5] Accordingly, Bivens failed to preserve his right to challenge the evidence post-verdict, and, thus, this assignment of error is without merit.

### (9) Recovery of Money

Bivens states that the money recovered from his person was taken by officers and used against him at trial. He complains that at trial, the officers "never once brought up any reason why money was taking [sic] and being used against" him and that there was no reason to believe the money was involved with the drugs. The

_____

[5]The Defendant did object on the basis that he had not been provided a copy of the report prior to trial. The State responded that the evidence was provided to the Defendant's attorney. The trial court then confirmed with the State that the certificate of analysis with a notice of intent was provided to defense counsel. Also, the notice of intent was filed into the record on April 28, 2010, along with the certificate of analysis. Accordingly, the trial court overruled the Defendant's objection.

only evidence upon which the State relied to connect the money to drugs was the recovery of drugs from inside the vehicle. Bivens denies knowledge of the "very small amount" of drugs found and states that no other evidence or testimony showed intent. Because his testimony indicates that he worked hard for the money, Bivens contends that the money should be returned to him.

First, Bivens does not claim, nor does the record reflect, that he motioned the trial court for the return of his money. Thus, there is no ruling from the lower court for this court to review. Uniform Rules—Courts of Appeal, Rule 2-12.4 provides, in pertinent part, "[t]he brief of the appellant or relator shall set forth the jurisdiction of the court, a concise statement of the case, the ruling or action of the trial court thereon, a specification or assignment of alleged errors relied upon, the issues presented for review, an argument confined strictly to the issues of the case, free from unnecessary repetition, giving accurate citations of the pages of the record and the authorities cited, and a short conclusion stating the precise relief sought." Accordingly, the alleged error is not considered.

### (10) Alleged Errors in State's Appellate Brief

Bivens argues that several facts in the State's appellate brief are incorrect. Bivens, however, does not allege a trial error or ruling for this court to review, and, thus, fails to comply Uniform Rules—Courts of Appeal, Rule 2-12.4. Accordingly, the alleged error is not considered.

### (11) Transcript

Bivens argues that the transcripts in the record of all the proceedings do not accurately reflect what was said in court. Bivens contends that testimonies, statements, and answers are missing. According to Bivens, the transcripts differ from the truth which would be on the recordings of the proceedings. Bivens requests that the voice recording of all matters involving his case be reviewed.

Bivens previously requested that this court obtain the tape recordings based on numerous alleged inaccuracies in the transcripts of his preliminary hearing and trial. Bivens's request was denied. Bivens fails to raise any new allegations or reasons for reviewing the audio tapes of the proceedings, and, thus, Bivens's request is denied.

IV.

## CONCLUSION

Bivens's conviction and sentence are affirmed. This court deletes the provision of Bivens's sentence requiring payment to the Public Defender's Office and instructs the trial court to make an entry in the court minutes reflecting the change.

**AFFIRMED WITH INSTRUCTIONS.**